UNITED STATES of America,
Appellant,

v.

CHAMBERLAIN WHOLESALE GRO-
CERY COMPANY and W. G.
Cozard, Appellees.

UNITED STATES of America,
Appellant,

v.

Walter NEUGEBAUER and Marie Neuge-
bauer, Appellees.

UNITED STATES of America,
Appellant,

v.

William R. ELLIS and Esther M.
Ellis, Appellees.

UNITED STATES of America,
Appellant,

v.

Andrew W. REIS and Millie Reis,
Appellees.

Nos. 15302–15305.

United States Court of Appeals
Eighth Circuit.

Nov. 2, 1955.

Roger P. Marquis, Atty., Department of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Clinton G. Richards, U. S. Atty., Sioux Falls, S. D., and John F. Cotter, Atty., Department of Justice, Washington, D. C., were on the brief), for appellant.

John F. Lindley, Chamberlain, S. D. (M. A. Brown, Chamberlain, S. D., was with him on the brief), for appellee Chamberlain Wholesale Grocery Co.

Donald J. Porter, Chamberlain, S. D., for appellees Andrew Reis and Millie Reis.

M. T. Woods, Sioux Falls, S. D. (G. F. Johnson, Gregory, S. D., was with him on the brief), for appellees Walter Neu-

---

**3.** Horacek v. Smith, 1948, 33 Cal.2d 186, 199 P.2d 929; Van Buskirk v. Kuhns, 1913, 164 Cal. 472, 129 P. 587, 44 L.R.A., N.S., 710.

gebauer and Marie Neugebauer and William R. Ellis and Esther M. Ellis.

Before WOODROUGH, JOHNSEN and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

These four appeals are from judgments entered upon awards made by commissioners appointed by the District Court to determine compensation pursuant to Rule 71A(h) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The lands were among those taken for the Fort Randall Dam and Reservoir in South Dakota. In No. 15,302 the land taken (1.19 acres) is situated in the City of Chamberlain which is in the Southern Division of the District of South Dakota, for which court is held at Sioux Falls, about 145 miles distant. The land was part of the right of way of the Chicago, Milwaukee, St. Paul & Pacific Railroad Company, improved by buildings owned by and used by the Chamberlain Wholesale Grocery Company under a 25-year lease from the railroad company. Since the latter disclaimed any interest, the trial involved only the value of the lessee's improvements. In No. 15,303, 394.26 acres were taken from a stock-raising ranch of 2,090.98 acres owned by appellees, Mr. and Mrs. Walter Neugebauer. In No. 15,304, 689.43 acres were taken from a stock-raising ranch of 4,001.44 acres owned by appellees, Mr. and Mrs. William R. Ellis. In No. 15,305, 1,210.72 acres were taken from another stock-raising ranch of 5,815.95 acres owned by appellees, Mr. and Mrs. Andrew W. Reis.

In each case, the petition in condemnation contained a demand for trial by jury. Each appellee applied to the court for determination of the issue of compensation by commissioners. In each instance, the application was supported by affidavit of appellees or their attorney, and opposed by affidavit of the Special Assistant to the United States Attorney. The most detailed affidavit supporting an application for commissioners was that of Mr. and Mrs. Reis in No. 15,305. So far as material, it stated:

"The 1,210.72 acres to be condemned by the plaintiff in this proceeding are an integral part of a 5,815.95 acre ranch owned by affiants, and situated some 20 miles southwest of Chamberlain, South Dakota, and at a junction of the Missouri river and the White river, in Lyman County, South Dakota. The nearest Federal Court town is Pierre, South Dakota, which is approximately 125 miles distant from the ranch. Affiants intend to produce from five to ten neighbors and Chamberlain residents at the hearing on this matter, to give testimony concerning the value of said land being condemned and it will be expensive and inconvenient for such witnesses to be compelled to travel to Pierre, South Dakota in order to give their testimony in this matter. That part of the road to this ranch from the City of Pierre is impassable, or nearly so, in wet or snowy weather; that for a jury to travel from the City of Pierre to view the land at the times of the year it would sit on this case would be very expensive and might easily be impossible because of weather conditions and road conditions, this being particularly true as to any traveling about upon and within the ranch itself.

"That since part of this land adjoins the Missouri River and the White River, and since said land is located in a fly-way of Canada geese that rest on sand-bars in said Missouri and White rivers in and during the migratory flight of such geese from Canada and North Dakota to the southern states, part of the tract involved herein is peculiarly valuable as geese and duck hunting grounds. Said fly-way involved in this tract is one of the best Canada geese hunting grounds in the central part of the United States, and the value of the hunting rights upon said land is real and substantial; part of said tract has been re-

leased by affiants from the plaintiff, but they are prevented by such lease terms from leasing said hunting rights to others, and are prevented from themselves hunting upon said lands unless they will agree in turn to permit the public to hunt thereon without any permission from affiants as lessees and former owners.

"The 1,210.72 acres being condemned by the plaintiff are made up as follows: about 140 acres of river bottom crop land, about 60 acres of tillable bottom meadow land, about 23 acres of upland crop land, about 400 acres of creek and timber pasture land, about 100 acres of valley pasture, about 60 acres of accretion land, about 90 acres of willow bar, and about 300 acres of upland pasture. Some of the bottom land produces alfalfa, and some is devoted to the production of alfalfa seed, and some is used for the growing of small grain, corn and cane crops. Due to its location and other natural conditions, the said timber land furnishes excellent shelter and protection for livestock in the winter. In addition, there are two flowing wells on the property being taken, such wells providing year round water in ample quantity for the livestock herd on the ranch. The property being taken is well improved, containing a two story residence, barn, machine shed, hen-house, granaries, garage, corrals, brooder house, cribs, and concrete stock tank, and other miscellaneous improvements. Affiants are being left with about 4,600 acres of the original 5,800 acre ranch. The acres remaining are in part upland pasture and in part crop land. Before the condemnation, the ranch was a balanced ranch, being properly equipped for the raising of livestock and caring for the same on the ranch the year around, and raising on the ranch all feed necessary for such stock the year around. The 1,210.72 acres being taken by the plaintiff are property which provided much of the winter feed and all the winter shelter for the stock, thus the ranch is no longer a balanced ranch, and it is questionable that successful operations could be conducted at all on the remaining acreage because of the loss of winter quarters, as aforesaid.

"To fix a just compensation in the proceeding for the 1,210.72 acres taken by the plaintiff, multiple circumstances are presented, which call for the consideration of various elements. These elements include the value of the land taken in fee, severance value, flowage easement value, value of improvements, value of hunting rights, and numerous other factors. This ranch is located within a few miles of several other similar ranches, as to which ranches the Court has recently granted similar motions for reference to Commissioners. Affiants respectfully submit that it is both important and fair and just to both plaintiff and defendants herein that all of the ranches in this immediate area which are being taken at this time for the Fort Randall re-location be compensated for on a uniform basis. Reference of this case as well as the several others recently already referred, will tend to prevent discrimination and will provide for uniformity of compensation. It is for just such reasons that in its 1951 supplementary report, the Advisory Committee Notes on Rule 71A(h) recommend the use of a reference to Commissioners, not only in TVA projects, but also in other large governmental projects such as flood control, hydroelectric power, reclamation, and others."

The opposing affidavit of the Special Assistant to the United States Attorney stated:

"That said tract which is being acquired by the Government consists of 1,210.72 acres of land used principally for agricultural purposes, and that said tract is a part of a

larger acreage totalling 5,815.95 acres. Said tract is located about fourteen miles southwest of Chamberlain, South Dakota, at the west side of the mouth of the White River. Chamberlain, South Dakota, is approximately ninety miles from Pierre, South Dakota, and approximately one hundred forty-five miles from Sioux Falls, South Dakota, both of which are Federal Court towns, and there is a good hard surface oiled and paved road and mainly traveled highway to both Sioux Falls, South Dakota, and Pierre, South Dakota. That the next regular jury term in Pierre, South Dakota, will commence on May 11, 1954.

"That the tract of land in question is not of unusual character and that its greatest use is for agricultural purposes, principally for grazing of cattle. That there are no factors or unusual circumstances stated in defendants' Motion or Affidavit in support of same to justify the appointment of a commission of three persons to determine the issue of just compensation, but that the same can properly and more feasibly be submitted to the next regular jury term of Federal Court.

"That the appointment of commissioners involves considerable additional expense to the United States of America by reason of the fact that certain per diem fees must be paid to said commissioners. That said action as far as this tract is concerned is a simple condemnation proceeding in which the plaintiff, United States of America, seeks to condemn 1,210.72 acres of land used for agricultural purposes and lying within less that one hundred fifty miles of a Federal Court town, and that there are no extraordinary factors or circumstances warranting the appointment of commissioners in this case."

The Court's order appointing commissioners recited:

"The Court then heard the affidavits of the parties and also heard the argument of counsel for each of the parties hereto, and it appearing to the satisfaction of this Court from the evidence adduced that the lands of the defendants are situated approximately 125 miles from the nearest Federal Court House located at Pierre, South Dakota; that the issues in this action involve lands varied in kind, character and adaptability, including crop, bottom, meadow, bench, pasture and grazing land, land adaptable to the production of alfalfa, hay and alfalfa seed, corn, grain, and other crops, natural livestock shelter, flowing wells and springs for stock water and that there is involved in this case the severance of land from the remainder of the ranch and the issue of severance damage; that the ranch in this case constituted a balanced unit before the taking; that said ranch provided good annual wild fowl hunting; that this case involves the taking of various ranch buildings and improvements; that upon the hearing of the issue of just compensation in this case the defendants intend to offer the oral testimony of from five to ten of their neighbors and residents of their area and that it would be expensive and inconvenient for such witnesses, to travel to the nearest Federal Court House in Pierre, South Dakota to give their testimony in this case.

"And it further appearing to the satisfaction of this Court from the evidence adduced that it is necessary that the triers of the issue of just compensation should carefully examine each and every one of the various kinds and parcels of land involved herein as well as hear the testimony upon said issues and that it would be, for all practical purposes, impossible to cause or permit a jury to make such an examination.

"And, it appearing and the Court now finding and deciding that due to the character, location and quantity of the property taken and for other reasons above recited, it is necessary and in the interest of justice that the issue of just compensation in this matter be tried to Commissioners pursuant to said Rule 71A, * * *."

After viewing all the lands, the commissioners (the same in all four cases) proceeded to trial at Chamberlain, South Dakota. The first case heard (now No. 15,303) began on November 18, 1953 and ended on November 20. The owner and seven others testified for him; the Government called six witnesses. No. 15,302 took but one day, November 23. Eight witnesses, including the owners' president, testified for it; the Government called three. In No. 15,305 after an afternoon session on November 24 at the home of Mr. Reis to take his testimony, hearings were resumed at Chamberlain December 14, and concluded the next day. Besides Mr. Reis and his two sons, six witnesses were called for the defendant and eight for the government. Trial of No. 15,304 took three days, December 16 through December 18. The owners' eight witnesses included the man and wife who owned the land; the Government called five witnesses.

In the case to determine compensation due for the land taken from the ranch of Mr. and Mrs. Reis (now No. 15,305) whose affidavit has just been set out, the 1,200-odd acres taken included all the ranch improvements; dwelling, barn, etc. Five of the owners' witnesses testified in respect of the amount of compensation. Henry A. Boe and W. L. Dyce appraised, first, land, and, second, improvements taken and finally, value of the remaining land. Mr. Boe valued the land at $73,260 made up as follows: 206 acres at $110 an acre, 400 acres at $90, 100 acres at $30 and 464 acres at $25. He valued the improvements, which he itemized, at $26,245, and he estimated severance damages to be $42,050, or $10 an acre. Mr. Dyce valued the land at $84,000;

600 acres at $100 an acre, 160 at $60, 315 at $40 and 90 at $20. His valuation of the itemized improvements was $25,575 and his estimate of severance damages was the same as Mr. Boe's. P. V. Lenz, the only other witness who testified as to total compensation, said without detail that the land taken with improvements was worth about $125,000 and that the remaining land was damaged at the rate of $10 an acre. Mr. Reis testified that severance damages amounted to $10 an acre. Lee Schoenhard testified as to the reproduction cost new less depreciation of the dwelling.

On February 12, 1954, the commissioners submitted in each case a report which without discussion made a finding as to compensation due. The recommended awards were as follows:

| | |
|---|---|
| No. 15302 | $56,524 |
| No. 15303 | 43,581 |
| No. 15304 | 39,836 |
| No. 15305 | 80,320 |

Exceptions filed by the Government to the recommended awards as excessive and based on inadmissible testimony were overruled by the trial court which thereupon entered judgments for the amounts recommended by the commissioners.

The only ground upon which the government (appellant) predicates error and asks for reversal of the judgments is that the court erred in each of the cases in denying the demand for a jury trial under Rule 71A(h) duly and timely made in each of the cases by the Government.

The legislation under which the condemnation proceedings for the Fort Randall Dam were had made no provision for any special tribunal for the trial of the issue of just compensation so that the following provisions of Rule 71A(h) were applicable and governed the procedure in the cases: "* * * any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or within such further time as the court may fix, unless the court in its discretion orders that, because of the char-

acter, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it. * * * "

It is contended for the government that the true intent and purport of the quoted provisions of the Rule is that it "gives either party to a condemnation proceeding a right to demand a jury trial of the issue of compensation" and "that ordinarily that demand must be granted" and can be denied only when, by virtue of circumstances peculiar to a particular case, the issue of just compensation can be determined more justly by commissioners than by a judge and jury." The necessary implication from the contention seems to be that this court should reverse the judgments in these cases unless the appellees can show from the record to the satisfaction of the appellate court that judge and jury could not have determined compensation as justly as commissioners.

The position of the appellees, on the other hand, is that Rule 71A(h) vests a broad discretion in the District Court to make election between the two traditionally approved methods of procedure and has empowered only that court in its discretion to prescribe which procedure is to be followed to try the issue of compensation in the condemnation cases as to which Congress has not chosen to set up any "tribunal specially constituted" to perform the task. They point out that the form of the Rule as it now stands promulgated in the first instance by the Supreme Court and thereafter adopted by the Congress reflects a compromise between the advocates of commissioners and those favoring the court and jury as the appropriate tribunal. They refer to the origins and history of the Rule published in connection with it in 28 U.S.C.A. Pocket Part, particularly the Supplementary Report of the Advisory Committee to the Supreme Court of March, 1951. It is stated in that report, i. a., that the reasons which convinced the Advisory Committee that the use of commissioners instead of juries is desirable in TVA cases were the same reasons that had been urged as to other large governmental projects, such as flood control and others, and the report added, "If our reasons for preserving the TVA system were sound, provision for a jury in similar projects of like magnitude seemed unsound." The Committee observed that "It would be difficult to state in a rule the various conditions to control the District Court in its choice" but the Committee listed the reasons that had convinced it of the desirability of the use of commissioners in TVA cases [1] and stated "In large projects like the TVA the court may decide to use a commission. In a great number of cases involving only sites for buildings or other small areas, where use of a jury is appropriate, a jury may be chosen. The District Court's discretion may also be influenced by local preference or habit, and the preference of the Department of Justice and the reasons for its preference will doubtless be given weight. The committee are convinced that there are some types of cases in which use of a commission is preferable and others in which a jury may be appropriately used, and that it would be a mistake to provide that the same kind of tribunal should be used in all cases."

1. 1. The TVA condemns large areas of land of similar kind, involving many owners. Uniformity in awards is essential. The commission system tends to prevent discrimination and provide for uniformity in compensation. The jury system tends to lack uniformity. Once a reasonable and uniform standard of values for the area has been settled by a commission, litigation ends and settlements result. 2. Where large areas are involved many small landowners reside at great distances from the place where a court sits. It is a great hardship on humble people to have to travel long distances to attend a jury trial. A commission may travel around and receive the evidence of the owner near his home. 3. It is impracticable to take juries long distances to view the premises. 4. If the cases are tried by juries the burden on the time of the court is excessive.

[1, 2] There can be no doubt that when the committee "earnestly" recommended "the rule as now drafted for promulgation by the Court, in the public interest", it intended a broad discretion to be vested in the District Court to choose between the use of juries or of commissioners in the condemnation cases brought before them. We think the rule as it stands does vest such discretion in the District Court and in the present cases we find no abuse of discretion by the District Judge in denying the government's demand for jury trial and directing the use of commissioners to fix compensation. The showing made by each of the landowners and the findings thereon of the court afforded sufficient basis for the Court's orders. We are in accord with the decisions of the Court of Appeals of the Tenth Circuit in United States v. Waymire, 202 F.2d 550, and United States v. Wallace, 201 F.2d 65. We do not find the conclusion arrived at in United States v. Theimer, 199 F.2d 501, controlling here.

Affirmed.