**In re Phillip Lee HANCOCK and Sherry Dian Hancock, Debtors.**

**John B. JARBOE, Trustee, Plaintiff,**

**v.**

**UNITED STATES SMALL BUSINESS ADMINISTRATION, Defendant.**

Bankruptcy No. 87–00797–W.

Adv. No. 88–0217–W.

United States Bankruptcy Court, N.D. Oklahoma.

March 9, 1992.

Paul R. Thomas, Tulsa, Okl., for plaintiff.

J.A. O'Toole, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION AND ORDER

MICKEY DAN WILSON, Bankruptcy Judge.

This adversary proceeding was submitted for decision on stipulations and briefs filed herein on December 30, 1988. Upon consideration thereof, and of the record herein, the Court finds, concludes, and orders as follows.

### FINDINGS OF FACT

In August 1976, the Small Business Administration ("SBA") made an unsecured disaster loan for flood loss to Phillip Lee

Hancock and Sherry Dian Hancock ("the Hancocks"), stipulation no. 3.

Although not so stipulated, it appears that the Hancocks defaulted on repayment of the abovementioned loan.

On February 16, 1987, pursuant to 31 U.S.C. § 3720A and 15 U.S.C. § 634(b)(6), the 1986 Federal income tax refund in the amount of $1,669.79 owed by the Internal Revenue Service ("IRS") to the Hancocks was applied to the pre-existing balance of the debt owed to SBA by the Hancocks, stipulation no. 4.

On March 27, 1987, the Hancocks filed their voluntary petition for relief under 11 U.S.C. Chapter 7 in this Court, stipulation no. 1.

John B. Jarboe is the duly appointed, qualified and acting Trustee ("the Trustee") of the Hancocks' estate in bankruptcy, stipulation no. 2.

On August 18, 1988, the Trustee filed his complaint commencing this adversary proceeding. On September 23, 1988, SBA answered and counterclaimed. On December 30, 1988, the parties filed their stipulations and briefs, and submitted the matter for decision thereon.

Any "Conclusions of Law" which ought more properly to be "Findings of Fact" are incorporated herein by reference.

## CONCLUSIONS OF LAW

The essential facts are that, less than six weeks before the Hancocks entered bankruptcy, the IRS, the Secretary of the Treasury, and SBA among them applied money owed by IRS to the Hancocks against a debt owed by the Hancocks to SBA. This was done pursuant to 31 U.S.C. § 3720A, which provides in pertinent part as follows:

§ 3720A. *Reduction of tax refund by amount of debt.*

(a) Any Federal agency that is owed a past-due legally enforceable debt ... by a named person shall ... notify the Secretary of the Treasury of the amount of such debt.

\* \* \* \* \* \*

(c) Upon receiving notice from any Federal agency that a named person owes to

such agency a past-due legally enforceable debt, the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such person. If the Secretary of the Treasury finds that any such amount is payable, he shall reduce such refunds by an amount equal to the amount of such debt, pay the amount of such reduction to such agency, and notify such agency of the individual's home address.

\* \* \* \* \* \*

(f) For purposes of this section—

(1) the term "Federal agency" means a department, agency, or instrumentality of the United States ... and includes a Government corporation (as that term is defined in section 103 of title 5, United States Code);

\* \* \* \* \* \*

Since no dispute appears as to the sufficiency of compliance with these statutory requirements, the Court assumes that SBA is a Federal agency; that notice was duly given to the Secretary of the Treasury; that a tax refund of $1,669.79 was owed by IRS to the Hancocks; and that the Secretary of the Treasury for IRS actually paid $1,669.79 to SBA on or about February 16, 1987.

The Trustee sued SBA to recover the tax refund of $1,669.79 as a preferential transfer pursuant to 11 U.S.C. § 547, § 550. SBA counterclaimed for determination of its secured status under 11 U.S.C. § 506(a); setoff under 11 U.S.C. § 553; relief from stay under 11 U.S.C. § 362(d), *nunc pro tunc* if necessary to validate setoff; abandonment of the refund under 11 U.S.C. § 554(b)—and even managed to introduce turnover under 11 U.S.C. § 542 into the business. The parties' briefs do not meet each other squarely: the Trustee emphasizes § 547, § 553; SBA emphasizes § 362, § 506, § 542, § 554.

The parties raise no issues regarding "administrative offset" under 31 U.S.C. § 3716, or sovereign immunity or waiver thereof under 11 U.S.C. § 106(b).

Since the payment occurred pre-petition, 11 U.S.C. § 362 cannot be involved. Since the Trustee's attempt to avoid a preferential transfer is in effect an attempt to create an asset of the estate which does not exist yet, 11 U.S.C. § 541(a)(3), there can be no question of abandonment of estate assets under 11 U.S.C. § 554(b). Turnover under 11 U.S.C. § 542(b) refers to debts in the nature of accounts receivable which are assets of debtor at commencement of his bankruptcy case, has nothing to do with defense against a preference action (which entails recovery under § 550, not turnover under § 542), and in any event begs the question of whether or to what extent "such debt may be offset under section 553." 11 U.S.C. § 506(a) likewise begs the question of whether or to what extent a claim may be "subject to setoff." SBA concedes all the elements of a voidable preference except 11 U.S.C. § 547(b)(5); but its defense under (b)(5) rests on its question-begging assumptions under §§ 506(a) and 542(b), which refer in turn to § 553.

It appears to this Court that the basic issue involves collision between avoidance of preferential transfers under 11 U.S.C. § 547 and setoff under 11 U.S.C. § 553. The Secretary of the Treasury used money which IRS owed the Hancocks to satisfy a debt which the Hancocks owed SBA. The Trustee calls this a preferential transfer; SBA calls it a setoff. The Trustee proposes that preference controls setoff, i.e., an otherwise valid setoff is avoidable as a preference. SBA proposes that setoff controls preference, i.e., an undoubted preferential transfer is exempt from avoidance if it happens to take the form of setoff. The Trustee rejoins that, even if a proper setoff is not avoidable as a preference, *this* transaction was not a proper setoff under various elements of 11 U.S.C. § 553.

There is much authority on the subject. But these authorities are in some conflict: the supposed theory of setoff is not persuasively followed through in many cases; and "mandatory" authorities are difficult to reconcile with each other. This Court attempts to clarify matters, by considering first the law of preferential transfers in bankruptcy; then the general theory of setoff as it is supposed to exist in Anglo–American law; then certain special factors bearing on setoff in the context of bankruptcy; then treatment of setoff in bankruptcy by statute, by the U.S. Supreme Court and by some lower courts before enactment of the present Bankruptcy Code; and then treatment of setoff in the present Bankruptcy Code and in recent caselaw.

Bankruptcy courts are in the business of mitigating the harm caused by insolvency; they much prefer to do it by distributing assets, but they are often forced by lack of assets to do it by distributing losses instead, *In re First Security Mortgage Company,* 117 B.R. 1001, 1004 (B.C., N.D.Okl. 1990), *In re Mid Region Petroleum, Inc.,* 111 B.R. 968, 972 (B.C., N.D.Okl.1990). Hence the theory of avoiding preferential transfers, which takes from one lucky or favored creditor to give to the rest who were not so fortunate, so that all of them gain and lose in the same proportion. This is harsh from the point of view of the creditor who is forced to give up his preferential treatment; but it is fair and benevolent from the point of view of other creditors, whose own losses will be mitigated thereby. Some authorities have clearly recognized and forcefully stated this theory. For example, in *Pirie v. Chicago Title & Trust Co.,* 182 U.S. 438, 449–455, 21 S.Ct. 906, 909–913, 45 L.Ed. 1171, 1178–1180 (1901), Mr. Justice McKenna wrote,

> … It is hardly necessary to assert that the object of a bankrupt act, so far as creditors are concerned, is to secure equality of distribution among them of the property of the bankrupt—not among some of the creditors, but among all of them. Such object could not be secured if there were no provisions against preferences …

> &ast; &ast; &ast; &ast; &ast; &ast;

> … [W]e are brought to the consequences of the construction which we have put upon section 60. It is denominated absurd by appellants. What is the test of absurdity? The contradiction of reason, it may be said, and to make an

immediate application to legislation, the contradiction of the reason which grows out of the subject matter of the legislation and the purpose of the legislators. But all legislation is not simple nor its consequences obvious ...

\* \* \* \* \* \*

... The consequence ... is said to be that it will "harrass and embarrass the business of the country," and the specification is that any payment to a creditor may become a preference and the alternative forced upon him of giving it up or losing the right to prove his claim ... against his debtor's estate. That consequence does not seem to us very formidable ... Granting that such situation may be produced, is it anything after all but putting the creditor to an election of comparative and debatable courses where some loss must occur, whichever be taken? Business life has many such examples, and a law which has that consequence in seeking equality among creditors is certainly not absurd in even the loosest and most inconsiderate meanings of the word.

\* \* \* \* \* \*

It was for Congress to decide whether the consequences to a debtor of being forced into bankruptcy so far transcended the consequences to a creditor by a surrender of his preference ... And we see nothing unreasonable in the distinction or purpose.

However, many people—including many judges—perceive only the harm done to the one creditor and not the good done for the rest. For an excellent discussion of legal—and especially judicial—insensitivity to the special demands of bankruptcy equity, see Weisberg, "Commercial Morality, the Merchant Character, and the History of the Voidable Preference," 39 Stanford L.Rev. (No. 3, Nov.1986) p. 3ff.

The Bankruptcy Act of 1898 ("the Act") failed to deal effectively with preferential transfers. Act § 60a defined "A preference ..." fairly broadly; but § 60b allowed *avoidance* of only those preferences received by creditors who "ha[d], at the time when the transfer [was] made, reasonable cause to believe that the debtor [was] insolvent." This was inconsistent and undesirable in policy—for a transfer can be preferential in its effects whether or not it is guilty in intent; and the policy of equal distribution among creditors is chiefly concerned with adjusting the general *effects* of insolvency, not with punishing sporadic examples of bad faith.

The Bankruptcy Code of 1978 ("the Code") aimed to redress this failure. "Transfer" was defined in 11 U.S.C. § 101, in a manner intended to be "as broad as possible," H.Rep. No. 95–595 (1977) p. 314, S.Rep. No. 95–989 (1978) p. 27, U.S.Code Cong. & Admin.News 1978, p. 5787—with one exception to be noted below. And 11 U.S.C. § 547 made preferential transfers avoidable regardless of the receiving creditor's knowledge or suspicions, thus directing bankruptcy judges to lift their eyes from evil intent and look to preferential effect, and greatly expanding the potential reach of actions to avoid preferential transfers, *Union Bank v. Wolas,* —— U.S. ——, 112 S.Ct. 527, 532, 116 L.Ed.2d 514 (1991). With unprecedented effectiveness, " 'the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally,' " *id.* 112 S.Ct. p. 533 quoting H.Rep. No. 95–595, pp. 177–178, U.S.Code Cong. & Admin.News 1978, p. 6138. Congress did not except Federal agencies. § 547(b)(1) provides for avoidance of "any transfer ... to or for the benefit of a creditor;" § 101(10) defines "creditor" as "entity that has a claim ...;" § 101(15) defines "entity" so as to include "governmental unit;" and § 101(27) defines "governmental unit" so as to include Federal agencies such as IRS and SBA.

It is against this background, of "the prime bankruptcy policy of equality of distribution among creditors" as implemented by preference-avoiding powers of unprecedented scope, that setoff should be viewed.

Setoff is based on "the common sense view that a man should not be compelled to

pay one moment what he will be entitled to recover back the next," William H. Loyd, "The Development of Setoff," 64 U.Penn.L.Rev. 541 (April 1916). It is a procedural or remedial device employed by a court to dispose of rival claims by litigants before the court. Instead of issuing rival judgments, the court, if satisfied of the enforceability of each separate claim, applies the amount that would have been given in judgment on one claim against the amount that would have been given in judgment on the other claim, to arrive at a balance due or net figure which is declared owing in a single judgment. Thus, setoff is the reduction of one litigant's claim by an opposing claim—in modern procedural terms, reduction of a claim by a counterclaim (or vice versa, whichever is larger). See 20 AM.JUR.2D (1965) "Counterclaim, Recoupment, and Setoff," §§ 2, 7, 10. It is "the power of extinguishing judgments," *Blount v. Windley*, 95 U.S. 173, 177, 24 L.Ed. 424, 425 (1877). It is basically defensive: it reduces the amount that need be paid by each party, until the smaller debt is reduced to zero and the larger debt is reduced to its excess or net over the smaller, 20 AM.JUR.2D, supra, §§ 2, 7. For this reason, setoff was once known as "defalcation"—"literally, 'chopping off' or 'cutting down' ... i.e., 'cutting down' one obligation to the extent of a reciprocal one," *In re Turner*, 134 B.R. 646 (B.C., N.D.Okl.1991).

Because it involves the reconciliation of claims to arrive at a net figure for judgment, setoff is something necessarily done, or at least approved, *by a court*, 20 AM. JUR.2D, supra, §§ 2, 7, 14. It is not a substantive right, but a procedural gimmick, part of adjective and not substantive law, *id.*, §§ 7, 11, 14, 16, 18, 20. "The necessity of action by the court" has long been recognized, *Cumberland Glass Mfg. Co. v. DeWitt & Co.*, 237 U.S. 447, 455, 35 S.Ct. 636, 639, 59 L.Ed. 1042, 1048 (1915). The term "setoff" is sometimes used broadly to include the acts of private parties in cancelling their mutual debts without prior authorization by a court, *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528–529, 33 S.Ct. 806, 808, 57 L.Ed. 1313, 1316 (1913). Such do-it-yourself setoff or *stoppage* is recognized in some degree in commercial practice, *id.* But it must be pointed out that private stoppage need not always rise to the dignity of judicially-approved setoff. Private stoppage threatens always to degenerate into a supposed "right" to steal someone else's property to make up for what you think he has stolen from you; and therefore must be carefully contained to prevent brawling.

Setoff does not involve payment—indeed, it is the opposite of payment; it is a judicial determination that, to the extent one claim is set off by another, there need be no payment except as to any balance or net amount left after setoff, 20 AM.JUR.2D, supra, § 10. Setoff "extinguish[es] judgments by compelling the plaintiff to receive something other than money in satisfaction thereof," *Blount v. Windley*, 95 U.S. p. 177, 24 L.Ed. p. 425. " '... [A]n offset is not a payment ... An offset is a bookkeeping transaction or "a mere shifting of credits." By its very nature an offset cannot augment the receiver's estate,' " *Hibernia Nat'l Bank v. Federal Deposit Insurance Corp.*, 733 F.2d 1403, 1408 (10th Cir. 1984) quoting *Chase Manhattan Bank, N.A. v. Federal Deposit Insurance Corp.*, 554 F.Supp. 251, 254 (W.D.Okla.1983) (emphasis original).

The rival debts need not arise out of the same transaction—where they do arise out of the same transaction, one usually speaks of *recoupment*, not setoff, 20 AM.JUR.2D, supra, § 11. But the rival debts must be owed by the same parties against each other; else there is no reason or excuse, or even procedural opportunity, to apply the debts against each other—hence the traditional requirement of setoff that debts be "mutual," *id.*, §§ 74ff. Other traditional requirements follow logically from the nature of the gimmick. For example, since setoff is a sort of judicial accounting among potential judgments, it requires definite amounts to be used in computation of a net figure—hence the traditional requirement of setoff that debts be "liquidated," *id.*, §§ 60ff.

"The precept" of setoff, Mr. Justice Cardozo mellifluously observed, is "framed on

the example of ancient laws across the seas," *Lowden v. Northwestern Nat'l Bank & Trust Co. of Minneapolis, Minnesota,* 298 U.S. 160, 163, 56 S.Ct. 696, 698, 80 L.Ed. 1114, 1116 (1936). These far-off things remain relevant to issues of setoff here and now. Setoff was known to Roman law (which insisted on formal, usually judicial setoff) and early French law (which was more tolerant of mere stoppage), and made its first appearance in English jurisprudence in the continentally-influenced courts of equity. English courts of law, forced to present ruthlessly simplified issues to lay juries, refused to entertain two rival claims at once, for fear that the main issue would be "blown off by a side wind," Loyd, 64 U.Penn.L.Rev. *id.* p. 544. (Centuries later, the U.S. Supreme Court would still refuse to allow a penalty for usury owing to a bankrupt estate to be setoff or "cut down" by the usurer's claim against the estate, so that in the usury action "the trial of guilt or innocence may not be embarrassed by any other question," *McCollum v. Hamilton Nat'l Bank of Chattanooga,* 303 U.S. 245, 249, 58 S.Ct. 568, 571, 82 L.Ed. 819, 823 (1938).) The result was multiplicity and circuity of actions "at law." It fell to the courts of equity to remedy this among other defects of the common law. Like other equitable remedies, setoff was not a right of the parties but a power of the court, to be exercised as circumstances and the chancellor's conscience indicated. This rather freewheeling equitable setoff was gradually supplemented by setoffs directed by statute in various particular instances. "It was through bankruptcy proceedings that setoff first obtained a foothold in English law," being enacted for the first time in a temporary bankruptcy act, 4 Anne c. 17 sec. 11, *id.* p. 547. In the American colonies, setoff first appeared in 1645 in an act of the Virginia Assembly intended to help streamline litigation. (The same Assembly passed a complementary "act prohibiting attorneys from practicing in the courts for money, for the reason that suits had been multiplied by the 'unskillfulness and covetousness of attorneys,' " *id.* p. 555.) Setoff is now provided for in specific situations by many statutes; and has even come to be exercised by courts "at law," either under general statutory authority or as a latter-day common-law doctrine derived from the original equitable doctrine. Both in equity and at law, both in England and in America, "two distinct motives may be detected; one based on the idea that an injustice is done the [litigant] in refusing him this privilege, the other that unnecessary lawsuits are a nuisance," *id.* p. 562. See also 20 AM.JUR.2D, supra, §§ 7, 14, 16, 18.

In recent civil law systems, setoff has drifted so far from its Roman origins as to become a substantive right of parties involving automatic cancellation of reciprocal obligations, called *compensatio* or "compensation," *Blount v. Windley,* 95 U.S. p. 178, 24 L.Ed. p. 426; *Cumberland Glass Mfg. Co. v. DeWitt & Co.,* 237 U.S. pp. 455–456, 35 S.Ct. p. 639, 59 L.Ed. p. 1046. But Anglo–American setoff, especially equitable setoff, usually remains a procedural option to be exercised in appropriate circumstances in the sound discretion of the court, 20 AM.JUR.2D, supra, §§ 7, 14, 18, 24, 25, 29, 64, 75, 161. For example, courts of equity are not bound by technical notions of mutuality and can effect setoff wherever it appears proper to do equity, prevent injustice, and achieve the desired goals of procedural efficiency and fairness, *id.,* § 75. On the other hand, courts of equity need not permit setoff even where there is mutuality, if no equity would be served thereby, *id.* In Mr. Justice Cardozo's words,

> The right of set-off ... is not susceptible of definition in the abstract without reference to the time or occasion of the controversy or the relation of the suit to the primary proceeding ... varying with the needs of the occasion ...
>
> ... When things are called by the same name it is easy for the mind to slide into an assumption that the verbal identity is accompanied in all its sequences by identity of meaning. A court of equity in allowing or rejecting set-off will not be guilty of that fallacy. To know "the justice of the particular case" (*Scott v. Armstrong,* 146 U.S. 499, 36 L.Ed. 1059,

13 S.Ct. 148 ...) ... one must know the case in its particulars ... [O]ne must know ... all the circumstances ... that might affect the judgment of the chancellor in weighing the competing equities of the interested factions and shaping his decree accordingly ... A decision balancing the equities must await the exposure of a concrete situation with all its qualifying incidents ... [W]e disclaim ... a willingness to put the law into a strait-jacket by subjecting it to a pronouncement of needless generality,

*Lowden v. Northwestern Nat'l Bank & Trust Co. of Minneapolis, Minnesota*, 298 U.S. pp. 164–166, 56 S.Ct. pp. 698–699, 80 L.Ed. pp. 1116–1117. And see *In re Republic Financial Corp.*, 47 B.R. 766, 768 (B.C., N.D.Okl.1985) ("In general, setoffs are ... based on a concept of fairness.").

Thus, there are several kinds of setoff— (1) equitable, (2) general statutory, (3) specific statutory, (4) common-law. Equitable setoff, like other equitable remedies, is flexible, dependent on circumstances, and largely discretionary. "Legal" setoff, under statute or common law, is not necessarily as flexible as equitable setoff. See 20 AM.JUR.2D, supra, §§ 7, 14, 16, 18, 21, 24, 25, 36, 61, 64, 74, 75; 4 *Collier on Bankruptcy* (14th ed. 1978) ¶ 68.02[1] pp. 851–852 and n. 14, 15. Case law must be used with care, since decisions involving rigid "legal" setoff may not properly apply to situations involving flexible "equitable" setoff, and vice versa.

Courts of bankruptcy must beware of certain special considerations bearing on setoff as it arises in the bankruptcy context.

Because setoff is equitable and discretionary, and is to be allowed only where appropriate, courts must take into account the effects setoff may have on innocent third parties. Setoff "is exercised in aid of justice ... if the rights of no one but the [debtor] are affected by the act," *Blount v. Windley*, 95 U.S. p. 179, 24 L.Ed. p. 426. But setoff may be improper "where the creditors of the [debtor] have a right to have such a debt paid in lawful money" and not by the mere fiction of mutual satisfaction, *id.* As the U.S. Supreme Court observed in affirming a judgment allowing setoff,

In the case before us, if it appeared ... that there existed any creditors of the [debtor] who had proved their debts as the law required, the case might have been different. But there is no evidence in this record that there was any other creditor of the [debtor] in existence besides the defendant, when he made this motion for setoff,

*id.* In a later case, the U.S. Supreme Court noted that the equity in favor of a setoff agreed upon between the parties should be "superior to any subsequent equity not arising out of a purchase for value without notice," *Scott v. Armstrong*, 146 U.S. p. 508, 13 S.Ct. p. 150, 36 L.Ed. p. 1062. But where the debtor is bankrupt, setoff almost inevitably involves the rights of innocent third parties—the other creditors of the debtor, and their representative the Trustee. Thus, in a liquidation case, even where creditors' claims are allowed in full, they are not likely to be paid in full; the bankruptcy estate does not "owe" each creditor the full face amount of each creditor's allowed claim, but only each creditor's pro rata portion of available property of the estate—which may be only a small part of the full face amount of each allowed claim. If a creditor is permitted to set off the full face amount of its claim against a debt owing to debtor or to debtor's estate, that creditor will in effect get the full face value of its claim (even if in a negative, defensive sense) while other creditors get only their pro rata fraction of the full face value of their claims. If such a setoff is granted post-petition, it might amount to an extraordinary priority of distribution in satisfaction of that creditor's claim. If such a setoff occurred pre-petition, it might amount to a preference.

In the present instance, the Court must deal with a pre-petition transaction, and accordingly must consider the relationship of setoff to preference.

As with preferences in general, so with setoffs as preferences: some courts have resisted the idea, and failed to take account

of the interests of innocent third parties such as other creditors, e.g. *In re G.S. Omni Corporation,* 835 F.2d 1317, 1318 (10th Cir.1987). This Court believes itself bound by U.S. Supreme Court precedent and by bankruptcy statute, legislative intent and policy to take into account the interests of all creditors, not just of the one claiming setoff.

The Bankruptcy Act of 1800 provided that mutual debts "may be set off against [each] other," 4 *Collier on Bankruptcy* (14th ed. 1978) ¶ 68.01[1] p. 843 n. 5 quoting § 42, Bankruptcy Act of 1800. The Bankruptcy Acts of 1841, 1867 and 1898 all provided, in substantially similar though not quite identical terms, that setoffs "shall" occur, *id.* ns. 6, 7, ¶ 68.01[2] p. 844 n. 9. In the words of § 68a of the Act of 1898,

> In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

Read literally, the Acts of 1841, 1867 and 1898 would have created mandatory setoffs in the nature of continental-style *compensatio,* but only post-petition. The U.S. Supreme Court repeatedly held that such provisions were not to be read literally; they did not establish any absolute right to setoff, but merely codified the traditional power of setoff exercised in the sound discretion of the court.

> This section was not intended to enlarge the doctrine of set-off, or to enable a party to make a set-off in cases where the principles of legal or equitable set-off did not previously authorize it,

*Sawyer v. Hoag,* 84 U.S. (17 Wall.) 610, 622, 21 L.Ed. 731, 736 (1873) re § 20, Act of 1867; and see *Scammon v. Kimball,* 92 U.S. 362, 367, 23 L.Ed. 483, 485 (1876) re § 20, Act of 1867, noting that "Courts of equity ... will not allow a set-off" of a certain type "except under very special circumstances, and where the proofs are clear and the equity is very strong."

The object of this provision is to permit ... the statement of the account between the bankrupt and the creditor, with a view to the application of the doctrine of set-off ... The provision is permissive rather than mandatory, and does not enlarge the doctrine of set-off, and cannot be invoked in cases where the general principles of set-off would not justify it ... The matter is placed within the control of the bankruptcy court, which exercises its discretion in these cases upon the general principles of equity ... The section was taken almost literally from § 20 of the Act of 1867. In *Sawyer v. Hoag* ... in considering that section of the act of 1867, this court said: "This section was not intended to enlarge the doctrine of set-off, or to enable a party to make a set-off in cases where the principles of legal or equitable set-off did not previously authorize it." ... The object of this section was to give the District Court the right to apply the established principles of set-off to mutual credits ... and that court has the primary duty of determining for itself whether there are "mutual debts or credits" that should be set off one against the other according to the true intent and meaning of the Bankruptcy Act,

*Cumberland Glass Mfg. Co. v. De Witt & Co.,* 237 U.S. pp. 454–457, 35 S.Ct. pp. 638–640, 59 L.Ed. pp. 1045–1046, re § 68a, Act of 1898. In that case, Mr. Justice Day for the majority expressly distinguished this permissive "right" of setoff from the civil law's automatic *compensatio, id.* 237 U.S. pp. 455–456, 35 S.Ct. p. 639, 59 L.Ed. p. 1046. Even the dissenters agreed with the majority that

> It is equally indisputable, as long since settled by this court, that in exerting its powers when occasion requires it as between all or any of the items of the active or passive side of the bankrupt estate it is the duty of the court of bankruptcy not merely to determine the right of set-off by strict common-law principles, but to govern the subject by the broad doctrines of set-off as administered by courts of equity. *Sawyer v. Hoag* ...,

*id.* 237 U.S. p. 462, 35 S.Ct. p. 641, 59 L.Ed. p. 1048. The dissent was motivated by

"what seems ... the wrongful result" of refusing setoff under the circumstances, *id.* 237 U.S. p. 461, 35 S.Ct. p. 641, 59 L.Ed. p. 1048. In later years, this interpretation of Act § 68a was subject to exception, but in a manner which only served to prove the rule. Mr. Justice Cardozo suggested that § 68a did prescribe something like a mandatory setoff, but only for the narrow purpose of adjusting "a distribution of the assets," *Lowden v. Northwestern Nat'l Bank & Trust Co. of Minneapolis, Minnesota,* 298 U.S. p. 164, 56 S.Ct. p. 698, 80 L.Ed. p. 1116. In other situations, e.g. where the object was not to distribute but "to gather in the assets," then

> The rule [of setoff] for the purpose of such a suit is that enforced by courts of equity, which differs from the rule [of § 68] chiefly in its greater flexibility, the rule [of § 68] being framed in adaptation to standardized conditions, and that in equity varying with the needs of the occasion ...,

*id.* 298 U.S. p. 164, 56 S.Ct. p. 698, 80 L.Ed. pp. 1116–1117. Mr. Justice Douglas went so far so to rule that, in railroad reorganization proceedings under the Act, setoffs were so irreconcilable with "the policy of § 77" that they were absolutely forbidden, *Baker v. Gold Seal Liquors,* 417 U.S. 467, 474, 94 S.Ct. 2504, 2508, 41 L.Ed.2d 243, 250 (1974). Justices Stewart and Powell concurred in the result, on the ground that setoff could be refused in this case merely on the strength of *Lowden* 's precedent of "a case-by-case analysis of the propriety of each attempted setoff in the light of equitable considerations," *id.* 417 U.S. p. 476, 94 S.Ct. p. 2509, 41 L.Ed.2d p. 251. Mr. Justice Rehnquist dissented, but agreed with the rest of the Court that "If we accept Lowden ... the District Court in which suit is brought has discretion as to whether or not a setoff should be allowed," *id.,* 417 U.S. p. 482, 94 S.Ct. p. 2512, 41 L.Ed.2d p. 254.

The same notions were applied to pre-petition as well as post-petition setoffs. The Supreme Court has long been aware of the special factors that bankruptcy policy introduces into the ordinary practice of setoff:

> The [trustee] is the representative of the creditor as well as [of] the bankrupt ... The statute is full of authority to him to sue for and recover property, rights, and credits, where the bankrupt could not have sustained the action, and to set aside as void transactions by which the bankrupt himself would be bound. All this, of course, is in the interest of the creditors of the bankrupt,

*Sawyer v. Hoag,* 84 U.S. pp. 619–620, 21 L.Ed. p. 735. The preferential effect of setoff in bankruptcy was duly noted:

> It is true that [a deposit] creates a debt, which, if the creditor may set it off under [Act § ] 68, amounts to permitting a creditor of that class to obtain more from the bankrupt's estate than creditors who are not in the same situation, and do not hold any debts of the bankrupt subject to set-off ... It is true ... that in a sense the [off-setting creditor] is permitted to obtain a greater percentage of its claim against the bankrupt than other creditors of the same class, ...

*New York County Nat'l Bank v. Massey,* 192 U.S. 138, 147–148, 24 S.Ct. 199, 201–202, 48 L.Ed. 380, 384 (1904).

> ... In cases of this character it is essential to learn just what has taken place between the parties, with a view to ascertaining whether a preferential transfer of property to a creditor has resulted,

*Continental & Commercial Trust & Savings Bank v. Chicago Title & Trust Co.,* 229 U.S. 435, 442–444, 33 S.Ct. 829, 831, 57 L.Ed. 1268, 1272 (1913).

> In this case the Referee found as a fact that the Bank had no reasonable cause to believe that a preference would result ... and we, therefore, pass to the consideration of the right of set-off in the light of the finding by the Referee ... that the deposits were honestly made ... without any intent to prefer the Bank.

> \* \* \* \* \* \*

> ... The remedy against that evil is found in the fact that the Trustee is authorized to sue and recover if it is shown that ...

the money was deposited for the purpose of enabling a bank or other creditor to secure a preference,

*Studley v. Boylston Nat'l Bank,* 229 U.S. pp. 526–527, 529, 33 S.Ct. pp. 807–808, 809, 57 L.Ed. pp. 1316, 1317.

... the operation of this privilege of set-off has the effect to pay one creditor more than another,

*Cumberland Glass Mfg. Co. v. De Witt & Co.,* 237 U.S. p. 455, 35 S.Ct. p. 639, 59 L.Ed. p. 1046.

... [S]etoff ... to the extent that it is allowed ... grants a preference to the claim of one creditor over the others by the happenstance that it owes freight charges that the others do not,

*Baker v. Gold Seal Liquors,* 417 U.S. p. 474, 94 S.Ct. p. 2508, 41 L.Ed.2d p. 250 (majority opinion).

[Bankruptcy jurisdiction] certainly does empower the court to protect the "property" [of the debtor] and to immunize it from diminution through setoff ...,

*id.,* 417 U.S. pp. 476–477, 94 S.Ct. p. 2510, 41 L.Ed.2d p. 251 (concurring opinion).

... the allowance of a setoff grants a preference ...

It may be that upon a proper showing ... the trustees could have satisfied th[e] court that the allowance of a setoff in this case would be inconsistent with higher priorities ...,

*id.,* 417 U.S. p. 482, 94 S.Ct. p. 2513, 41 L.Ed.2d pp. 254–255 (dissenting opinion). But the Court tolerated pre-petition setoffs nonetheless, excusing them as "legalized preferences." This attitude comported with the Act's general failure to deal effectively with preferential transfers. However, judicial tolerance of "legalized preferences" was limited to "setoffs" in the strict sense—the Supreme Court did not excuse from avoidance any and all transactions of a vaguely reciprocal nature. The rule was that a transaction constituted a preferential transfer if it involved "parting with the bankrupt's property" so as "to diminish the estate of the bankrupt," *New York County Nat'l Bank v. Massey,* 192 U.S. pp. 146–147, 24 S.Ct. p. 201, 48 L.Ed. p. 384; but

was a setoff not liable to avoidance as a "transfer" if

this essential element of a preferential transfer within the meaning of the bankruptcy act—diminution of the bankrupt estate—is wanting. The fact that what was done worked to the benefit of the creditor, and in a sense gave him a preference, is not enough, unless the estate of the bankrupt was thereby diminished,

*Continental & Commercial Trust & Savings Bank v. Chicago Title & Trust Co.,* 229 U.S. p. 444, 33 S.Ct. p. 831, 57 L.Ed. pp. 1272–1273. And see *Studley v. Boylston Nat'l Bank,* 229 U.S. p. 529, 33 S.Ct. p. 809, 57 L.Ed. p. 1317 ("No money passed ... [the transaction] was ... a book entry equivalent to ... set-off").

As noted above, the Bankruptcy Code of 1978 increased the reach of the preference-avoiding power. As the preference-avoiding power was broadened, so the setoff exception to the preference-avoiding power was narrowed.

The new Code dealt with setoff in a new § 553, which abandoned the pseudo-mandatory wording of the setoff provisions of earlier Acts, and effectively removed the basis of such reservations regarding discretion as were expressed by Mr. Justice Cardozo in *Lowden* and Mr. Justice Rehnquist in *Baker v. Gold Seal Liquors.* Although the new Code confirmed the traditional rule of discretion in setoff, it undercut the traditional tolerance of setoffs as "legalized preferences." The House of Representatives' bankruptcy bill expressly provided that "transfer" included setoff.

Setoff is added to the definition for convenience and to avoid confusion. The definition is broad enough to encompass setoff, but because setoff is somewhat different and may generate conflicting interpretations without inclusion, its inclusion is made explicit,

H.Rep. No. 95–595 p. 314, U.S.Code Cong. & Admin.News 1978, p. 6271. This meant that pre-petition setoffs would simply be included among the general run of preferential transfers, and treated accordingly under § 547. The House's version of § 553 gave special treatment only to setoffs "af-

ter the commencement of the case," and even then subjected them to some limitation in the interest of other creditors. The Senate's version of "transfer" was identical to that of the House except that it did not specify "setoff;" and this version was the one enacted. The Senate's version of § 553 offered a complicated formula intended to allow partial recovery from a creditor whose pre-petition setoff was preferential in effect; and this was enacted (in even more convoluted form than in the original bill) as § 553(b). "The effect is that a 'setoff' is not subject to being set aside as a preferential 'transfer' but will be subject to special rules," Cong.Rec. (Sept. 28, 1978) p. H–11090. § 101 as enacted continued to define "transfer" in very broad terms, and taken by itself could even include setoff. Nevertheless, legislative history of § 553 indicates that pre-petition setoffs should not be considered "transfers." Pre-petition setoffs are to be dealt with as prescribed by 11 U.S.C. § 553(b), whose particular provisions must be taken to override the general provisions of 11 U.S.C. § 547. This is understandable insofar as a true setoff is a reconciliation of accounts and not a transfer of property.

To this extent, at least, SBA is correct: setoff under § 553(b) controls preference under § 547.

But what exactly is a "setoff" for purposes of § 553? Nowhere in the Code or its legislative history does a definition of "setoff" appear. Such definition is left to the courts to determine. As discussed above, the term "setoff" will bear a considerable range of meaning. This Court must construe the term for bankruptcy purposes, as a working part of the present Bankruptcy Code. In this light, "setoff" appears to be a sort of marginal preference, said to be "somewhat different" from transfers in general, and constituting an exception to the sweeping avoidance power enacted in § 547. As such, "setoff" should be construed so as to minimize its interference with § 547. This is best accomplished by giving "setoff" its traditional, rather narrow meaning. Where a transaction actually appears to be "somewhat different" from the general run of preferences, in

that it involves a mere netting-out of counterclaims or reconciliation of accounts and not a transfer of money or property, then such transaction may be considered a "setoff" within the meaning of § 553 and subject to special treatment under § 553(b). Any other transaction should be recognized as a "transfer" under § 101(54) and subject to avoidance as provided by § 547.

■ No true setoff can be accomplished by payment. Where there is payment, by definition there is no setoff. Here, the parties do not clearly stipulate to the manner in which the transaction at issue was accomplished. But 31 U.S.C. § 3720A(c) requires the Secretary of the Treasury to "*pay* the amount of such reduction to [the creditor] agency." Regulations thereunder likewise contemplate "[a]mounts collected" and "payment," 26 C.F.R. (4/1/86 ed., 4/1/87 ed., 4/1/91 ed.) § 301.6404–6T(h). This Court presumes that the statute and regulations were complied with. What happened here was not a mere netting-out of reciprocal obligations between debtor and IRS, or between debtor and SBA. What happened here was the seizure of debtor's property (tax refunds) and the payment of the same to SBA instead of to debtor's estate. What happened here was not a reconciliation of accounts, but the diversion of an asset. What happened here was not a mere procedural short-cut to an inevitable end—for, had this transfer not been made, the result would have been very different: the other creditors of the estate would have had access to the tax refund for partial payment of their debts, and while these creditors would have received more, SBA would have received less repayment of its particular debt. What happened here was therefore not a "setoff" at all, but a transfer preferring SBA over other creditors.

Alternatively, even if this transaction were of the general type which might be called "setoff," the question remains whether this transaction satisfies the usual conditions of setoff, and in particular the requirement of mutuality of obligations. " 'Setoff is only permitted ... between identical parties,' " *In re Republic Finan-*

*cial Corp.*, 47 B.R. p. 768 quoting *Matter of Springfield Casket, Inc.*, 21 B.R. 223, 228 (B.C., S.D.Ohio 1982). The Trustee argues that mutuality means that A owes B and B owes A; and "[s]ince the Debtors and the S.B.A. did not 'owe one another' in this case, it cannot be said that the requisite mutuality existed ...," Trustee's brief p. 3.

Certainly SBA owed debtors nothing; nor did debtors owe IRS anything. Therefore, to whatever extent these Federal agencies are considered separate entities, there was no mutuality of obligations. Only if "the United States of America" (in the person of the Secretary of the Treasury) is considered a unitary thing can it be said these debts were mutual.

The power of the United States to dispose of debts and credits among its various agencies, in a manner loosely describable as "setoff," has long been established, *Luther v. U.S.*, 225 F.2d 495, 498 (10th Cir. 1954 reh. den. 1955), and is currently provided by the express terms of a statute, 31 U.S.C. § 3720A, whose legality appears unquestioned. What is at issue here is not the United States' legal power and authority to do the act, but whether the act done, no matter how legal, is avoidable in bankruptcy as a preferential transfer or excepted from such avoidance as a "setoff" within the meaning of the Bankruptcy Code. *For Federal budgetary and debt collection purposes*, 31 U.S.C. § 3720A treats Federal agencies as if they were the same entity. The question is whether, *for bankruptcy purposes*, this Court should treat Federal agencies such as IRS and SBA as separate entities.

11 U.S.C. § 101(27) states that " 'governmental unit' means United States ... [or] department, agency, or instrumentality of the United States ...," indicating that Federal agencies may be considered separately and apart from the "United States." Bankruptcy law generally treats Federal agencies as separate units. Where (as often happens) several different agencies are creditors in the same case, those agencies may have claims of different priority, and may well fight each other over access to the meager spoils of the bankrupt estate. For example, had the facts of the present case been slightly different, IRS might have a priority tax claim competing with SBA's unsecured deficiency claim under 11 U.S.C. § 726(a)(1), (2)(A). Especially in these days of budget cuts, it is idle to pretend that Federal agencies have no separate identities and interests. Such agencies are related; but they are not identical.

Debts and credits among different governmental agencies have been held lacking in mutuality for bankruptcy setoff purposes in *In re Mehrhoff*, 88 B.R. 922 (B.C., S.D.Iowa 1988); *In re Butz*, 86 B.R. 595 (B.C., S.D.Iowa 1988); and *In re Rinehart*, 76 B.R. 746 (B.C., D.S.Dak.1987).

The last-named decision was appealed: in *U.S. ex rel. Small Business Administration v. Rinehart*, 88 B.R. 1014 (D.S.Dak.1988), the District Court ruled that mutuality did exist among these agencies, but that nevertheless "setoff is not mandatory" and "[t]he bankruptcy court must exercise its equitable discretion in deciding whether to ... effect administrative offsets under section 553," *id.* p. 1018; and affirmed the decision below. (The District Court's decision was in turn affirmed, without discussion of the problem of mutuality, by *Small Business Administration v. Rinehart*, 887 F.2d 165 (8th Cir.1989).) There is not much difference between the Bankruptcy and District Court opinions in *Rinehart:* both agree that different governmental agencies may not be entitled to setoff in bankruptcy. Other courts have held that mutuality does exist among governmental agencies, simply because such agencies have accomplished the transaction in question, *In re Hazelton*, 85 B.R. 400 (B.C., E.D.Mich.1988); *In re Thomas*, 84 B.R. 438 (B.C., N.D.Tex.1988); *In re Britton*, 83 B.R. 914 (B.D., E.D.N.Carolina 1988); *In re Pinkert*, 75 B.R. 218 (B.C., N.D.Tex.1987); *In re Buske*, 75 B.R. 213 (B.C., N.D.Tex.1987); *Waldron v. Farmers Home Administration*, 75 B.R. 25 (N.D.Tex.1987); *In re Schons*, 54 B.R. 665 (B.C., W.D.Wash.1985). This Court finds such authorities unpersuasive, for they appear to confuse the power with the right. The *power* of governmental agencies to

switch payments among themselves is established by both case law and statutes such as 31 U.S.C. § 3720A, and is not in question here. The *right* of governmental agencies to switch payments among themselves in circumstances of bankruptcy is tested by bankruptcy law; and bankruptcy law provides that the power can be found inequitable and wrongful under the circumstances and denied or avoided.

In this case, IRS had no use for or right to debtors' tax refund, and was bound to pay it to somebody. Pursuant to 31 U.S.C. § 3720A, IRS paid it to SBA. This payment was undoubtedly legal and, in ordinary circumstances, would have been unobjectionable. But debtors' bankruptcy takes this case out of the realm of ordinary circumstances. 31 U.S.C. § 3720A is not the only Federal statute or Federal policy to be reckoned with here; in the extraordinary circumstances of bankruptcy, Federal bankruptcy laws and bankruptcy policies must also be taken into account. Here, IRS' obedience to 31 U.S.C. § 3720A had the effect of paying the unsecured debt of SBA in preference to unsecured debts owed to other creditors of the bankrupt Hancocks, in violation of "the prime bankruptcy policy of equality of distribution among creditors." Such payments, legal outside bankruptcy, are avoidable in bankruptcy.

As noted above, equity courts may permit setoff even if strict mutuality is lacking. The overriding factor is whether equity will be served by allowing or refusing setoff. Here the equities favor the Trustee, or rather the general creditors who he represents.

In this case, the Court sees no reason why it should *not* consider SBA as an entity separate from the IRS and the Secretary of the Treasury. It follows that the obligations herein were not mutual, so their disposition according to 31 U.S.C. § 3720A does not qualify as an allowable setoff.

In sum, this transaction, whatever it was, was not a "setoff" for bankruptcy purposes, because the transaction was an actual transfer of funds and not a mere netting-out of obligations, and because there was no mutuality of obligations.

Since there is no setoff in the first place, no portion of 11 U.S.C. § 553 applies. Therefore the matter should be dealt with as a preferential transfer under 11 U.S.C. § 547.

The stipulated facts establish the elements of an avoidable preference under 11 U.S.C. § 547(b). No affirmative defenses under 11 U.S.C. § 547(c) have been raised.

Therefore, the Trustee's prayer for avoidance of a preferential transfer and recovery of $1,669.79 from SBA must be granted. Judgment shall be entered accordingly. The Trustee shall prepare and submit an appropriate form of judgment.

AND IT IS SO ORDERED.