In re Vernon C. SCHMIDT, Debtor.

James F. PFAU, Trustee of Vernon C. Schmidt, Debtor, Plaintiff,

v.

FIRST NATIONAL BANK, PIPESTONE, MINNESOTA, Defendant.

Bankruptcy No. 3–80–758.
Adv. No. 81–54.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Dec. 23, 1982.

Robert Rice, Pipestone, Minn., for plaintiff-trustee, James F. Pfau.

Scott L. Barduson of O'Neill, O'Neill & Barduson, Pipestone, Minn., for defendant, First Nat. Bank, Pipestone, Minn.

JOHN J. CONNELLY, Bankruptcy Judge.

The above entitled adversary proceeding came on for hearing before the Honorable John J. Connelly, Bankruptcy Judge, on the complaint of the Plaintiff. The facts have been stipulated by both parties and the case submitted on briefs.

Based on the facts as stipulated, all the papers and records herein, and upon consideration of the arguments of counsel, the Court makes the following:

## FINDINGS OF FACT

1. An involuntary petition for relief under Chapter 7 of Title 11, the Bankruptcy Code, was filed on May 20, 1980. An order for relief was entered by consent on July 2, 1980. The ninetieth day before the filing of the petition was on February 20, 1980.

2. James F. Pfau was appointed Interim Trustee on July 11, 1980, and became Trustee after the First Meeting of Creditors. The debtor had been engaged in a number of businesses as a sole proprietor.

3. The Defendant was the bank where the Debtor was engaged in a number of transactions. The Defendant lent to the Debtor in excess of $73,000.00 in several loan transactions. The Defendant had $25,-415.11 in collateral as security for these loans. On February 20, 1980, the Debtor owed $73,164.38 in principal and $2,046.47 in interest on these loans for a total of $75,-210.85.

4. The Defendant on February 20, 1980, was owed $24,000.48 for overdrafts honored by the Defendant on the Debtor's checking account.

5. The Defendant owed the Debtor and his wife, Mary L. Schmidt, jointly the sum of $16,825.65 on deposit with the Defendant in a joint savings account. Withdrawals from the savings account were allowed only with the written consent of both the joint owners. The savings account was estab-lished from the sale of real estate of the Debtor and his wife.

6. The total indebtedness owed to the Defendant by the Debtor was $99,211.13 on February 20, 1980. The indebtedness of the Defendant to the Debtor and his wife was $16,825.65.

7. On February 20, 1980, the Debtor deposited $4,825.00 in his checking account. On March 7, 1980, the Debtor deposited $3,000.00 in his checking account. On March 19, 1980, he deposited $40.00. Total deposits to the Debtor's checking account were $7,865.00.

8. On April 2, 1980, Mary L. Schmidt gave the Debtor her written consent to withdrawal of the amount then in the joint savings account, $16,934.56. On April 7, 1980, the Defendant applied the money in the savings account first to the overdraft balance at that date, $16,598.67, and the remainder, $335.89, to the balance due on the loans.

9. On April 7, 1980, prior to the application of funds, the Defendant was owed $92,-948.36.

## CONCLUSIONS OF LAW

### I. Checking Account Transactions

■ 1. The Plaintiff asserts that the deposits to the checking account of the Debtor were preferences avoidable under 11 U.S.C. § 547(b). The Plaintiff further asserts that the transfer of $16,934.56 from the savings account in payment of the overdrafts of the checking account and the notes was an impermissible setoff under 11 U.S.C. § 553.

2. The deposits to the checking account satisfy all the requirements of § 547(b), but two exceptions to the avoidability of preferential transfers apply, 11 U.S.C. § 547(c) provides that the Trustee may not avoid a transfer:

"(1) to the extent that such transfer was—

(a) intended by the Debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(b) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(a) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(b) made not later than 45 days after such debt was incurred;

(c) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(d) made according to the ordinary business forms."

3. The Defendant and the Debtor had a history of engaging in credit transactions by allowing the Debtor to overdraft his account. The Defendant would cover the checks until the Debtor could deposit the funds to cover the checks.

4. The extension of credit by the Defendant and the deposits by the Debtor were intended to be contemporaneous. The transactions were, in fact, substantially contemporaneous. Two of the deposits totaling $7,825.00 were made within 15 days. The last deposit of $40.00 was made within 30 days.

5. The extension of credit by the Defendant through covering the Debtor's overdrafts was in the ordinary course of business of the parties. The payment of the overdrafts amount to a continuing line of credit for the Debtor. The deposits by the Debtor were made in the ordinary course of his business and according to ordinary business terms. The deposits were made within 45 days of the date the debt was incurred. As noted, the deposits were all within 30 days.

6. The Plaintiff may not avoid the transfers of property of the Debtor. While the checking account transactions are transfers within the terms of 11 U.S.C. § 547(b), they are excepted from avoidance by 11 U.S.C. § 547(c)(1) and (2).

## II. Savings Account

1. 11 U.S.C. § 553(a) provides that: "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case."

2. Under state law, a bank has the right to offset amounts on deposit with it against the amounts owed it by the depositor. The defendant had the right to offset the money in the savings account against the amounts owed to the Defendant, but only if the debts were mutual.

3. Mutual debts are debts owed between two parties in the same capacity. The checking overdrafts and the notes were owed by the Debtor, individually and solely, to the Defendant. The savings account was a debt owed by the Defendant to the Debtor and Mary Schmidt jointly.

4. Joint ownership alone might not destroy mutuality. Each joint ownership has an interest in whole and can usually withdraw all the money in an account. This account, however, was restricted. Withdrawal had to be by both owners. The account was established for a special purpose. It is similar to a trust account. On February 20, 1980, the debts were not mutual.

5. The debts became mutual on April 2, 1980. On that date Mary Schmidt transferred her interest in the account to the Debtor by authorizing the withdrawal of the money by the Debtor, alone.

6. On April 7, 1980, when the Defendant exercised its right of setoff, the debts were mutual. The terms of 11 U.S.C. § 553(a) are satisfied, but the provisions of 11 U.S.C. § 553(b) require that the Defendant return the setoff.

7. § 553(b) provides:

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6) or 365(h)(1) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee

may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(a) 90 days before the date of the filing of the petition; and

(b) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

8. The language of this subsection is complex, but it results in a mathematical formula for determining the "improvement of position" test. The effect of this subsection is to allow the Trustee to recover set-offs which advance the position of one creditor at the expense of all other creditors during the 90 day period before bankruptcy. It works hand in hand with the philosophy of § 547.

9. The provisions of § 553(b) can be determined and expressed by the formula:

Debt owed by debtor less debt owed to debtor on the ninetieth day

minus

Debt owed by debtor less debt owed to debtor on the date of the setoff.

This formula when applied to the instant case results in a recovery for the Plaintiff.

10. The first determination to be made is when the insufficiency arose. § 553(b)(2) defines insufficiency as the amount by which the debt owed the Defendant exceeds the debt owed the Debtor. On the ninetieth day, the Debtor owed the Defendant $99,211.13. The Defendant did not owe the Debtor any amount on a mutual debt. The insufficiency arose on the ninetieth day in the total amount due, $99,211.13, to the Defendant.

11. The insufficiency on the date of the setoff was $92,948.36 less $16,934.56 for a total of $76,013.80.

12. The amount by which the insufficiency on the ninetieth day, $99,211.13, exceeds the insufficiency on the date of setoff, $76,013.80, is $23,179.33.

13. The provision of § 553(b) limit the Trustee to recovery "from the creditor the amount so offset". The Plaintiff may recover the full amount offset but not more.

### ORDER

NOW THEREFORE it is ordered and adjudged that the Plaintiff, James F. Pfau, Trustee of Vernon C. Schmidt, recover from the Defendant, First National Bank, Pipestone, Minnesota, the sum of $16,934.56 pursuant to 11 U.S.C. § 553(b).

LET JUDGMENT BE ENTERED ACCORDINGLY.