In re COMMERCIAL
REPROGRAPHICS,
INC., Debtor.

WESTAMERICA BANK, N.A., Plaintiff,

v.

DEPARTMENT OF CORRECTIONS, STATE OF CALIFORNIA; Konica Business Machines U.S.A., Inc., a Nevada Corporation; Gregg A. Eichler, as Trustee in Bankruptcy for the Estate of Commercial Reprographics, Inc., Defendants.

DEPARTMENT OF CORRECTIONS,
STATE OF CALIFORNIA,
Counterclaimant,

v.

CALIFORNIA STATE BOARD OF EQUALIZATION, WestAmerica Bank, N.A., Konica Business Machines U.S.A., Inc., and Gregg A. Eichler, Trustee, Counterdefendants.

KONICA BUSINESS MACHINES U.S.A.
INC., a Nevada Corporation,
Counterclaimant,

v.

WESTAMERICA BANK, N.A.,
Counterdefendant.

Bankruptcy No. 287–07306–C–7.
Adv. No. 288–0027.

United States Bankruptcy Court,
E.D. California.

Dec. 28, 1988.

Frandzel & Share, San Francisco, Cal. for plaintiff and counter-claimant WestAmerica Bank.

John K. Van de Kamp, Atty. Gen., Margaret Garnand Venturi, Deputy Atty. Gen., Sacramento, Cal., for the State.

Martin B. Brifman, Sacramento, Cal. for debtor.

Kimble, MacMichael & Upton, Fresno, Cal. for defendant Konica Business Machines U.S.A., Inc.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

CHRISTOPHER M. KLEIN, Bankruptcy Judge.

These summary judgment motions involve two distinct disputes among three parties arising from their respective pre-bankruptcy dealings with the now-defunct debtor, Commercial Reprographics. A secured creditor filed this adversary proceeding claiming priority over another secured creditor for the same collateral, an account, and demanding payment from the account debtor. The account debtor claims a setoff against Commercial Reprographics on the account.

The State of California ("State"), the account debtor, counterclaimed with a rules interpleader action to avoid a risk of multiple liability to the competing secured creditors and to vindicate its claim to a right to offset various sums that Commercial Reprographics owes the State, primarily for taxes, against $110,496.10 that it owes Commercial Reprographics on account of a purchase of Konica Royal copiers. Fed.R. Civ.P. 22(1).[1] The outcome depends upon

---

**1.** Citations to rules herein are to the Federal Rules of Civil Procedure for any rule that is incorporated into the Bankruptcy Rules. The

Federal Rules of Civil Procedure apply to adversary proceedings in bankruptcy only insofar as they are made applicable thereto in rules prom-

whether the State's debt is "proceeds" of sale of inventory or is a mere "account."

The other parties are the trustee (who claims no interest in the outcome), Konica Business Machines U.S.A., Inc. ("Konica"), and, as plaintiff, WestAmerica Bank. Konica and WestAmerica Bank each claim to have a perfected senior security interest in the account receivable from the State, and each has demanded that the State pay it directly. In addition, WestAmerica Bank claims Konica converted its property, and Konica invokes the equitable doctrine of marshalling against WestAmerica Bank.

The State's claim against the estate is a core proceeding involving the allowance of claims. 28 U.S.C. § 157(b)(2)(B). The dispute between Konica and WestAmerica Bank is also a core proceeding to determine the priority of liens. 28 U.S.C. § 157(b)(2)(K). WestAmerica Bank's and Konica's other claims against each other are noncore proceedings. All parties have consented to determination and judgment by the bankruptcy court on any noncore issues that may be involved. 28 U.S.C. § 157(c)(2).

WestAmerica Bank wins the contest with Konica. It is the assignee of a floating lien covering the account as set forth in a financing statement that was filed before Konica's financing statement. There are no genuine issues of material fact. The bank is entitled to summary judgment as a matter of law. Genuine issues of material fact preclude summary judgment on the State's claim of setoff.

### 1. *Undisputed Facts.*

Bank of America extended credit to Commercial Reprographics, obtained a security agreement and filed a U.C.C.–1 Financing Statement with the California Secretary of State on July 2, 1984. This financing state-ment was the earliest pertinent financing statement and covered:

> All accounts, chattel paper, contract rights, and general intangibles, now owned or hereafter acquired. All returned or repossessed goods, now owned or herafter [*sic*] acquired, which, on sale or lease, resulted in an account or chattel paper.

Declaration Of William Watson In Support Of Motion For Summary Judgment ("Watson Declaration"), Exhibit 6; Declaration Of William Watson Re Reply To Konica's Opposition To Plaintiff's Motion For Summary Judgment ("Watson Supplemental Declaration"), Exhibit 1. This Bank of America financing statement unambiguously covers accounts and is the source of WestAmerica Bank's claim of priority over Konica and of a security interest in the account (*qua* account) owed by the State.

WestAmerica Bank lent Commercial Reprographics $800,000.00 pursuant to a note dated September 19, 1985, whereupon Bank of America was paid $506,069.45 on October 23, 1985. Watson Declaration, Exhibit 11, page 4, and Exhibit 12, page 2; Watson Supplemental Declaration, ¶ 2 and Exhibit 2.

Bank of America, upon being paid in full, assigned to WestAmerica Bank all of its rights under its financing statement, which assignment on U.C.C.–2 was filed with the California Secretary of State on October 25, 1985. Watson Declaration, Exhibit 7; Declaration Of P. Anne Klassner In Support Of Plaintiff And Counterclaimant WestAmerica Bank's Motion For Summary Judgment ("Klassner Declaration"), Exhibit A, page 4.[2]

Konica claims its rights from a U.C.C.–1, naming Royal Business Machines, Inc., as secured party, and filed with the California

---

ulgated by the Supreme Court. Fed.R.Civ.P. 81(a)(1). The following rules have been so made applicable: Fed.R.Civ.P. 3, 4(a)–(c)(2)(C)(i), 4(e), 4(g)–(j), 5, 6(b), 6(d)–(e), 7–10, 12(b)–(h), 14–21, 22(1), 23–37, 40–46, 52, 54(a)–(c), 55–56, 58–65, 67–71, 81(c), 82. Some of these rules are supplemented by additional provisions in the Bankruptcy Rules. Wherever such supplementation is material, the bankruptcy rule is cited. In addition, the following rules

apply in revised form: 11, 12(a), 13, 65.1, 72, 77, 80, 83 and are cited to both sets of rules.

**2.** The Klassner Declaration serves primarily to place in the record materials produced by the other parties pursuant to Federal Rule of Civil Procedure 34. No objection to consideration of any of this evidence on summary judgment has been lodged.

Secretary of State on September 11, 1985. The financing statement covered:

All Royal bond copiers and all other office equipment bearing the name Royal or Royfax or name Royal Typewriter Company a division of Royal Business Machines or any other trademark adopted by Royal Typewriter Company a division of Royal Business Machines Inc. [punctuation as in original]

Affidavit Of John Sandberg In Opposition To Plaintiff's Motion For Summary Judgment, Exhibit A.

After September 11, 1985, WestAmerica Bank obtained blanket security agreements and filed other financing statements that covered, inter alia, all inventory of Commercial Reprographics together with proceeds. These statements are the source of WestAmerica Bank's claim of a security interest in the account receivables from the State, *qua* proceeds of sale of inventory.

On November 23, 1987, the State of California Department of General Services issued its purchase order number 01634 on its purchase estimate number KC870035 for eighteen Konica Royal model 2803MR copiers plus supplies. The price was $109,728.00 plus tax, subject to a 5 percent discount for payment within twenty days. The vendor was Commercial Reprographics. Delivery was to be "F.O.B. Destination" at California State Prison–Corcoran. The invoice was to be mailed to Department of Corrections, Accounting—CSP-Corcoran, 630 K St, Box 942883, Sacramento, CA. Klassner Declaration, Exhibit D, pages 8–11.

The goods were shipped from Konica Business Machines USA, Inc., 92 Bonaventura Drive, San Jose, CA, using as carrier Crescent Truck Lines, Inc., on its straight bill of lading number 9528. Response Of Defendant Konica Business Machines, U.S.A., Inc. To Plaintiff's Request For Identification And Production Of Documents, Exhibits A–B.

The goods were received at Corcoran on December 17, 1987. Klassner Declaration, Exhibit D, page 12.

On December 17, 1987, Commercial Reprographics' invoice number 150702 on purchase order number 01634 was received by the Department of Corrections Accounting—CSP–Corcoran in Sacramento. Klassner Declaration, Exhibit D, pages 16–18.

On December 18, 1987, Commercial Reprographics filed its chapter 11 bankruptcy case in this court.

On December 28, 1987, the California Department of General Services amended purchase order number 01634 to make the following modification:

ADD TO PURCHASE ORDER THE FOLLOWING PAYMENT INSTRUCTIONS:

Payment on this purchase order is to be made only to the assignee:

Konica Business Machines U.S.A., Inc.

500 Day Hill Rd.

Windsor, CT 06095

DO NOT PAY COMMERCIAL REPROGRAPHICS. COMMERCIAL REPROGRAPHICS WILL INVOICE FOR KONICA ROYAL.

The stated reason for change was "Omitted from original order." Klassner Declaration, Exhibit D, page 7.

On January 5, 1988, the State issued its check number 183–061864 to Konica Business Machines U.S.A., Inc., for $110,496.10, which sum reflects the contract price minus a 5 percent discount plus 6 percent tax. Klassner Declaration, Exhibit D, page 49.

On January 12, 1988, debtor's bankruptcy case was converted to chapter 7.

On January 13, 1988, WestAmerica Bank gave notice to California State Prison–Corcoran of the assignment to it of debtor's accounts receivables and demanded payment on purchase order 01634. Klassner Declaration, Exhibit D, page 57.

The State stopped payment on the check. The sum was later deposited into the registry of this court in connection with the instant interpleader action.

2. *WestAmerica Bank Against Konica.*

■ WestAmerica Bank defeats Konica under straightforward applications of Article 9 of the Uniform Commercial Code.

The initial focus is upon the transaction between the State and Commercial Reprographics. There was a contract between those two parties for the sale of goods. The goods were delivered. Commercial Reprographics had a right to be paid. That right to be paid was not backed by a security interest or by an instrument of a type that is, in the ordinary course of business, transferred by delivery with any necessary endorsement or assignment. Thus, it was an "account" within the meaning of U.C.C. § 9–106. Cal.Com.Code § 9106.

Bank of America had a valid security interest in "accounts" of Commercial Reprographics, backed by a properly filed financing statement. That interest was perfected before Konica obtained the security interest on which it relies. WestAmerica Bank extended credit that was used to pay off the $506,069.45 owed to Bank of America and obtained an assignment of Bank of America's rights.

Such assignments are permitted without affecting the perfected status of the security interest against creditors of and transferees from the original debtor. Cal.Com. Code § 9302(2); see B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code, ¶ 2.16 (1980); Clark, Uniform Commercial Code Annual Survey, 42 Bus.Law. 1333, 1377–78 (1987). Thus, WestAmerica Bank jumped into the shoes of Bank of America, ahead of Konica. Under ordinary principles of priority in time, WestAmerica Bank is senior to Konica. Cal.Com.Code § 9312(5).

The doctrine of equitable subrogation supports the same conclusion. Under that doctrine, a second lender can be defeated by a third lender who loans the debtor money to pay off the first lender. B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code, ¶ 2.16 (1980).

Konica's only chance is a purchase money security interest. Yet it has presented no summary judgment evidence to establish a genuine issue that it might have a purchase money security interest that might be entitled to priority notwithstanding WestAmerica Bank's status as earlier filed. Nor is it apparent that it could do so. The copiers were shipped directly from Konica to the State. They never entered Commercial Reprographics' inventory. There is no competent summary judgment evidence supporting an assignment of Commercial Reprographics' rights in its contract with the State to Konica.

Accordingly, there is no genuine issue of material fact. WestAmerica Bank has a security interest that takes priority over the security interest of Konica and is entitled to summary judgment as a matter of law.

### 3. The State of California Against WestAmerica Bank.

Genuine issues of material fact preclude summary judgment on the setoff claim asserted by the State and on the bank's cross-motion. WestAmerica Bank and Konica each have security interests in Commercial Reprographics' inventory that might enable tracing to proceeds.[3] United States v. Handy & Harman, 750 F.2d 777 (9th Cir. 1984). However, they are inapplicable here because the copiers never were inventory.

The key undisputed fact, in addition to those stated above, is that the copiers were shipped directly from Konica to California State Prison–Corcoran. Since they never passed into the inventory or possession of Commercial Reprographics, WestAmerica Bank's security interest in inventory did not attach to the copiers because they were never a part of Commercial Reprographics' inventory. WestAmerica Bank's security interest is limited to the account that arose upon delivery.

The State relies on a California statute that permits the State Controller, in his discretion, to offset any amount due to a state agency from any amount owing by any state agency to the same person or

---

3. WestAmerica Bank's security interest in inventory and proceeds is based on its own security agreements and financing statements and is independent of the rights assigned by Bank of America.

entity.[4] This creates a substantive right of setoff that is enforceable in bankruptcy as long as the Bankruptcy Code's requirements for setoff are satisfied and is enforceable under nonbankruptcy law against a U.C.C. Article 9 security interest in a mere account. State statutes have been upheld in analogous circumstances in bankruptcy. See *In re Farmer's Markets, Inc.,* 792 F.2d 1400, 1402–04 (9th Cir.1986) (enforcing California statute conditioning bankrupt's estate's sale of liquor license upon payment of back taxes).

█ Although there is no dispute that the State has some claims that qualify for setoff under its setoff statute, the evidentiary record does not adequately establish the nature or the amount of the State's claims. Accordingly, there is a genuine issue of material fact as to nature and amount.

There also is a genuine issue of material fact about whether there are mutual debts and claims. Setoff of mutual prepetition debts and claims is entrenched bankruptcy law. 11 U.S.C. § 553. The requirement of mutuality is key. Normally, mutuality entails the same party claiming in the same right.

Tax claims and nontax debts, both prepetition, do not necessarily fail the test of mutuality. *See In re Sound Emporium, Inc.,* 70 B.R. 22 (W.D.Tex.1987); *In re IML Freight, Inc.,* 65 B.R. 788 (Bankr.D.Utah 1986). The tax claims identified in this record appear to be prepetition. The account owed as a result of the disputed purchase of the copiers in this adversary proceeding is likewise prepetition. Intuitively, the State appears to be the real party in interest, thus satisfying the mutuality requirement that there be identity of parties holding in the same capacity.

This seemingly pedestrian conclusion that the State is the relevant party for purposes of identity of parties is clouded by the spectacle of two state agencies suing each other.[5] That suggests that there may be sufficient differences to warrant a conclusion that the requisite identity of parties and capacity is lacking. Further evidence is needed.

Article 9 does not, as WestAmerica Bank next argues, necessarily preclude setoff. The parties agree that rights of setoff are not covered by Article 9. Rights of setoff originate in something other than consensual security agreements; here, they originate in statute. Nevertheless, rights of setoff are expressly recognized at U.C.C. §§ 9–306(4)(d)(i) and 9–318(1). Cal.Com. Code §§ 9306(4)(d)(i) and 9318(1). *See* B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code, ¶ 1.8[9] (1980).

The rights that are asserted by the State arise out of the transaction in question ($6,254.50 in sales tax) and out of transactions independent of the purchase of copiers from Commercial Reprographics. As such, they are within the ambit of U.C.C. §§ 9–318(1)(a) and (b). *Handy & Harman,* 750 F.2d at 777–87; *Seattle–First Nat'l Bank v. Oregon Pacific Indus., Inc.,* 262 Or. 578, 500 P.2d 1033 (1972); B. Clark,

---

**4.** § 12419.5 Offsets; failure to file claim.
The Controller may, in his discretion, offset any amount due a state agency from a person or entity, against any amount owing such person or entity by any state agency. The Controller may deduct from the claim, and draw his warrants for the amounts offset in favor of the respective state agencies to which due, and, for any balance, in favor of the claimant. Whenever insufficient to offset all amounts due state agencies, the amount available shall be applied in such manner as the Controller, in his discretion, shall determine. If, in the discretion of the Controller, the person or entity refuses or neglects to file his claim within a reasonable time, the head of the state agency owing the amount shall file the claim on behalf of such person or entity;

if approved by the Controller it shall have the same force and effect as though filed by such person or entity. The amount due any person or entity from the state or any agency thereof is the net amount otherwise owing such person or entity after any offset as in this section provided.
For purposes of this section, an amount owing to a person or entity by any state agency shall include any tax refund.

**5.** In the interpleader action that was filed as a counterclaim, the State Department of Corrections is the plaintiff and the State Board of Equalization is a defendant. The California Attorney General has appeared as counsel for plaintiff and is counsel for defendant.

The Law of Secured Transactions Under the Uniform Commercial Code, ¶ 11.5 (1980).

WestAmerica Bank's contention that the Ninth Circuit's decision in *Handy & Harman* precludes the claimed setoff is founded upon the flawed assumption that WestAmerica Bank had a security interest in the copiers, *qua* inventory. As noted above, the copiers never passed into Commercial Reprographics' inventory and did not become subject to the bank's security interest in inventory and traceable to proceeds under U.C.C. § 9–307. Cal.Com.Code § 9307.

Instead, an account was created. That account is subject to the security interest. The *Handy & Harman* court noted that if a security interest in inventory is cut off leaving the financier to an action on the account, then an offset would be permissible under section 9–318(1). *Handy & Harman,* 750 F.2d at 786; Cal.Com.Code § 9318(1); Smith, Uniform Commercial Code Annual Survey: Secured Transactions, 41 Bus.Law. 1463, 1479–81 (1986) (discussing *Handy & Harman*). The same analysis, *a fortiori,* applies when the security interest did not attach to the goods in the first place.

There is a distinction between an account and proceeds of sale of inventory that the Ninth Circuit recognized in *Handy & Harman* and that makes a difference in this instance. The financing creditor in *Handy & Harman* defeated the setoff because its security interest was in inventory and proceeds. The *Handy & Harman* court agreed that the mere assignee of an account is vulnerable to court setoff claims. Since the copiers never entered Commercial Reprographics' inventory, proceeds are not involved. WestAmerica Bank is merely the assignee of an account against which setoffs are generally permissible.

WestAmerica Bank also argues that the State waived its setoff rights by initially issuing a check to Konica and by interpleading and depositing the funds in this court. Such a waiver is fact-bound and is inappropriate for decision on this record. The outcome may turn upon the question of whether the state government is so balkanized that the claims and debts of its various departments and agencies should not be deemed "mutual" for purposes of section 553. 11 U.S.C. § 553. Since more evidence is required, summary judgment would be premature.

For the foregoing reasons, WestAmerica Bank's motion for summary judgment against Konica is granted. The State Board of Equalization's motion for summary judgment and WestAmerica Bank's motion for summary judgment against the State of California are both denied, without prejudice.