**In re LAKESIDE COMMUNITY HOSPITAL, INC., Debtor.**

**Bankruptcy No. 91 B 07290.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 28, 1992.

James Newbold, Asst. Ill. Atty. Gen., Chicago, Ill., for Illinois Dept. of Revenue.

Michael Prousis, Asst. Ill. Atty. Gen., Chicago, Ill., for Illinois Dept. of Employment Sec.

Robert A. Carrane, Chicago, Ill., for debtor.

Dennas H. Heffner, Dept. of Justice, Chicago, Ill., for U.S. Trustee.

Patrick T. Sheehan, Office of the Chief Counsel, I.R.S., Chicago, Ill., Mark E. Leipold, Robins, Kaplan, Miller & Ciresi, Elenie K. Huszagh, Offices of Leon Zelechowski, Ltd., Chicago, Ill., for unsecured creditors committee.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The Illinois Department of Revenue and the Illinois Department of Employment Security (collectively, IDR/IDES) moved to modify the automatic stay so they can setoff their claims against the Debtor (the former operator of the hospital) against amounts due the Debtor from the Illinois Department of Public Aid (IDPA) for Medicaid reimbursements. The motion will be denied because the debts are not mutual, and the IDR/IDES therefore have no right of setoff protected in bankruptcy.

### BACKGROUND

There is no dispute about the facts. The Debtor, Lakeside Community Hospital, provided medical services to low-income patients covered by the Illinois Medicaid program. Charges for those services were supposed to be paid by the IDPA. Like other Illinois providers of medical services who have ended up in this Court, the Debt-

or did not receive prompt payment for those services. The Debtor filed its petition under Chapter 11 of the United States Bankruptcy Code in April, 1991, and the IDPA now owes the Debtor approximately $1.6 million.

On the other hand, the Debtor owes the IDR/IDES $325,994.67 for various pre-bankruptcy withholding and unemployment taxes. The IDR/IDES wants the stay modified so they can have the Comptroller setoff the taxes against the Medicaid obligation.[1]

### DISCUSSION

■ An Illinois statute, Ill.Rev.Stat., ch. 15, ¶ 210.05, allows the Comptroller, on request of an agency to whom an entity owes a debt, to deduct the amount of that debt from payments due the same entity from another agency.[2] The IDR/IDES argues that this statute creates a right to setoff debts owed to one state agency (such as the taxes the Debtor owes to the IDR/IDES) against debts owed by another state agency (such as the debt owed by the IDPA here). The IDR/IDES, in reliance on this statute, wants to setoff their tax claims against the Medicaid debt. That would result in the payment-in-full of pre-bankruptcy, unsecured claims of these creditors, while other unsecured creditors will receive little or nothing on account of their claims. In bankruptcy, such a result is permitted only if authorized, not only by state law, but also by section 553(a) of the Bankruptcy Code, 11 U.S.C. § 553(a). See *Matter of Elcona Homes Corp.* 863 F.2d 483, 484–85 (7th Cir.1988); 4 *Collier on Bankruptcy* § 553.06 at 553–39 (15th ed. 1991). The Illinois statute may "create[ ] a

substantive right of setoff that is enforceable in bankruptcy as long as the Bankruptcy Code's requirements for setoff are satisfied...." *In re Commercial Reprographics, Inc.*, 95 B.R. 174, 179 (Bankr. E.D.Cal.1988) (construing similar California statute).

A creditor's right of setoff is generally protected by section 553(a), but only to the extent certain conditions are met. In relevant part, that section provides:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

■ The term "mutual debt" is not defined in the Code. The mutuality requirement, however, is strictly construed. *In re NTG Industries, Inc.*, 103 B.R. 195, 197 (Bkrtcy.N.D.Ill.1989). Something must be owed by both sides. "[T]he mutual debts, to the extent equal, secure each party against the other's default." *Elcona Homes Corp.*, 863 F.2d at 487. See 4 *Collier on Bankruptcy* § 553.04 at 553–21. A state-created right of setoff does not, by itself, supply the required mutuality. In *WJM, Inc., v. Massachusetts Dept. of Public Welfare*, 840 F.2d 996, 1011–12 (1st Cir.1988), a state agency relied on a regulation allowing it to deduct from what it owes one nursing home any amount due from another home under common ownership. Each of the nursing homes was a

---

1. Pursuant to an agreed order, funds due from the IDPA that have been paid since the bankruptcy filing have been placed in escrow pending resolution of this dispute.

2. That statute provides in part:
   Whenever any person shall be entitled to a warrant or other payment from the treasury or other funds held by the State Treasurer, or any account, against whom there shall be any account or claim in favor of the State, then due and payable, the Comptroller, upon noti-

fication thereof, shall ascertain the amount due and payable to the State, as aforesaid, and draw a warrant on the treasury or on other funds held by the State Treasurer, stating the amount for which the party was entitled to a warrant or other payment, the amount deducted therefrom, and on what account, and directing the payment of the balance; which warrant or payment as so drawn shall be entered on the books of the Treasurer, and such balance only shall be paid....

separate entity, however, and the court found that the debts were not mutual, notwithstanding the regulation.

It is hornbook law that to be considered mutual, "debts must be in the same right and between the same parties, standing in the same capacity," 4 *Collier on Bankruptcy* ¶ 553.04, at 553–18 (L. King 15th ed. 1987). We do not think the fact that the [Department of Public Welfare's] offset procedure is authorized by state regulation warrants the conclusion that the debt incurred by [one nursing home]—the debt triggering the offset against Plainville and Winter Hill—can be seen as the debt of Plainville and Winter Hill for the purpose of the mutuality requirement.

■ The mutuality requirement is missing here too. Section 553 allows *"a creditor* to offset a mutual debt owing by *such creditor* to the debtor … against a claim of *such creditor*…."  "Creditor" is a defined term in bankruptcy law. " 'Creditor' means (A) *entity* that has a claim against the debtor….  " 'Entity' " is also a defined term: " 'Entity' includes … *governmental unit*…."  And, not surprisingly, "governmental unit" is also defined. That term "means … agency or instrumentality of … a State…."  11 U.S.C. § 101(10), (15), (27) (emphasis added). This case involves three different agencies of the State of Illinois. The two agencies seeking a setoff here are "creditors" because each is an "entity" (*i.e.*, an "agency or instrumentality of … a State") and each entity has a claim against the Debtor. On the other hand, the Debtor does not owe anything to the IDPA. But the IDPA is a different agency, and therefore a different "entity", than the IDR/IDES. Since the IDPA is a different "entity", it is also a different "creditor" than the agencies seeking relief here. On this literal reading, the mutuality required by section 553 is therefore lacking.

The conclusion that these agencies are separate creditors is supported by more than the plain language of the Code. The

agencies behave like separate creditors in all respects except the desire of the IDR/IDES to achieve a setoff. For example, they are each represented by a separate attorney, and the IDPA and the IDR/IDES have different interests in this case. The IDR/IDES want to collect their taxes, and have submitted to the jurisdiction of this Court by filing claims in order to do so. The IDPA, however, has consistently asserted it has not waived its sovereign immunity under 11 U.S.C. § 106(a), and has resisted attempts to involve it in this case.

Moreover, the state statute upon which the IDR/IDES rely, works only in one direction. It authorizes the Comptroller to setoff in favor of the requesting state agency, but neither that statute nor any other cited or known to this Court authorizes the Debtor to setoff the same debts. The Debtor could not have paid its taxes by sending a note with its tax returns telling the IDR/IDES it was setting off the IDPA debt. The Seventh Circuit in *Elcona Homes*, 863 F.2d at 485, assumed that one aspect of mutuality for section 553 purposes was that "the mutual debts … secure each party against the other's default."  That is not true here, and the asymmetry supports the conclusion that these agencies are different creditors under section 553.

■ The IDR/IDES, however, argue that they and the IDPA should be treated as one entity because, after all, the money all goes to and comes from the same place—the Illinois treasury. But, from a similar pragmatic, financial point of view, affiliated corporations should be treated as a single entity for setoff purposes. The Seventh Circuit has noted the futility of that argument. *Elcona Homes*, 863 F.2d at 487. The State's financial interest in all its agencies is not determinative of, or even particularly relevant to, the present issue.

It is true that courts considering similar facts, involving different government agencies, have held that mutuality exists so as to permit setoff. See, *e.g., In re Hanker-*

*son,* 133 B.R. 711, 714 (Bkrtcy.E.D.Pa.1991) (listing cases involving federal agencies); *In re Bennett,* 118 B.R. 564 (Bkrtcy. M.D.Tenn.1990).

Other courts have reached the result favored here. Recently, the court in *In re Hancock,* 137 B.R. 835, 846 (Bkrtcy. N.D.Ok.1992) criticized the decisions allowing setoff because "they appear to confuse the power with the right." Certainly the agencies have the power under state law to adjust accounts involving the same entity, just as the federal agencies involved in *Hancock* had the similar "power to switch payments among themselves." And this may mean that for fiscal purposes the agencies are part of one entity. *Id.* But the question perhaps not adequately considered in the authorities relied upon by the IDR/IDES is "whether, for bankruptcy purposes, this Court should treat Federal agencies ... as separate entities." *Id.* For reasons similar to those this Court has found persuasive, the *Hancock* court held that mutuality was lacking. Cf., *In re Commercial Reprographics, Inc.,* 95 B.R. 174, 179 (Bkrtcy.E.D.Cal.1988) (mutuality an issue of fact where government agencies appeared to have different interests).

For these reasons, the IDR/IDES do not have the right under the United States Bankruptcy Code to invoke the state law authorizing the Illinois Comptroller to setoff the Debtor's tax obligations against the IDPA's debt to the Debtor. Therefore, the request of the IDR/IDES to modify the automatic stay to permit such a setoff will be denied by separate order.