In the Matter of LAWNDALE STEEL CO., Debtor.

LAWNDALE STEEL CO., Plaintiff,

v.

MAGIC STEEL CO., Defendant.

Bankruptcy No. 90 B 03508.
Adv. No. 90 A 00192.

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 9, 1993.

Richard M. Bendix, Jr., Schwartz, Cooper, Kolb, et al., Chicago, IL.

William J. Barrett, Gardner, Carton & Douglas, Chicago, IL.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on the First Amended Complaint of Debtor Lawndale Steel Co., ("Lawndale") seeking to avoid a setoff by defendant Magic Steel Co. ("Magic"), in the amount of $11,225.31.

## I. FACTS

The relevant facts are undisputed and are contained in the parties' stipulation of agreed facts, filed with the Court on January 25, 1993. On December 5, 1989, Lawndale purchased steel from Magic. Magic issued its invoice for $11,225.31 for the purchase. On December 22, 1989, Magic purchased steel from Lawndale. Lawndale issued its invoice for $18,682.70 for the purchase. On February 16, 1990, Magic paid to Lawndale the amount of $7,457.39 representing the difference between the two accounts. Magic has made no additional payments to Lawndale. An involuntary Chapter 7 petition was filed against Lawndale on February 23, 1990. On March 14, 1990, the case was converted to a case under Chapter 11. In this adversary complaint Lawndale's position is that the setoff by Magic improved Magic's position by $11,225.31 during the 90 days preceding the bankruptcy, in contravention of § 553(b)(1). Magic's position is that according to the language of Section 553(b)(2), it did not improve its position by exercising setoff.

## II. JURISDICTION

This Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. Section 1334 and General Rule 2.33 of the United

States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. Section 157(b)(2)(B).

## III. DISCUSSION

### A. Setoff and Bankruptcy

■ Section 553 of the Bankruptcy Code recognizes a creditor's state created pre-petition right to setoff, whether or not setoff is consummated pre-petition. A creditor with the pre-petition right of setoff does not lose its rights by failing to setoff before a bankruptcy petition has been filed. The Bankruptcy Code treats the holder of an unconsummated right of setoff as a holder of a secured claim, to the extent of the right of setoff. 11 U.S.C. Section 506(a). In the present case, Magic exercised its right to setoff pre-petition. When a creditor engages in setoff pre-petition, the amount of allowed setoff is limited by the improvement in position test of Section 553(b). If a creditor has improved its position, and the amount is recaptured by the trustee, it is treated as a general unsecured claim. The improvement in position test of Section 553(b) provides as follows:

> (1) ... [I]f a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency the date of such setoff is less than the insufficiency on the later of—
>
>> (A) 90 days before the date of the filing of the petition; and
>> (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.
>
> (2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

11 U.S.C. Section 553(b).

Collier on Bankruptcy proposes the following formula for applying the Section 553(b) improvement in position test:

> (1) Ascertain any amount by which the claim of the creditor exceeded the debt owing to the debtor on the date of setoff. [this is the amount of the insufficiency at the time of setoff].
>
> (2) Ascertain the same figure for the date 90 days prior to the filing of the petition or for the first date during the 90–day period when the amount of the claim of the creditor exceeded the debt owing to the debtor [this amount is the first insufficiency for purposes of Section 553(b) ].
>
> (3) The trustee is entitled to recover any amount by which the figure in (2) exceeds that in (1).

4 COLLIER ON BANKRUPTCY, ¶ 553.01 at 553–9 (15th ed. 1992).

In the present case Lawndale and Magic disagree as to how and when the improvement in position test should be applied. Lawndale's position is that an insufficiency arose when it purchased steel from Magic on December 5, 1989, in the amount of $11,225.31. According to Lawndale, the amount of that first insufficiency must be compared to the amount of the insufficiency on the date that Magic exercised its right to setoff. On the date of setoff, Magic had already purchased steel from Lawndale for an amount in excess of the $11,225.31 ($18,682.00). Thus, Magic decreased its insufficiency to zero by purchasing steel and exercising setoff. According to Lawndale the $11,225.31 improvement in position may be recovered by the trustee.

Magic maintains that according to the definitions provided in Section 553, it has not improved its position in the 90 days preceding Lawndale's bankruptcy filing. According to Magic, there is no "insufficiency" until there are mutual debts and credits between the parties. Thus, argues Magic, there were no mutual debts between the parties until Magic purchased steel on December 22, 1989. On that date no insufficiency existed under Section 553(b)(2) because Magic's debt to Lawndale exceeded Lawndale's debt to Magic.

The language contained in Section 553(b) is ambiguous. It is clear that before a right to setoff is protected by Section 553, the mutual debt and the mutual credit must both exist pre-petition. *In re Garcia*, 23 B.R. 266, 268 (N.D.Ill.1982). However, it is not clear whether the "mutual debt" referred to in Section 553(b)(2) must also exist as of the date of the first transaction leading to an insufficiency.

## B. Statutory Construction of Section 553

■ The plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1988), *quoting*, *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). As long as the statutory scheme is coherent and consistent, there is generally no need for a court to inquire beyond the plain language of the statute. *Ron Pair Enterprises, Inc.*, 489 U.S. at 241, 109 S.Ct. at 1030. When the language before the court expresses Congress' intent with sufficient precision, reference to legislative history and pre-code practice is hardly necessary. *Id.* When possible, courts should apply the literal language of a bankruptcy statute in a manner which is consistent with its purpose. *See, In re Shattuc Cable Co.*, 138 B.R. 557 (Bankr.N.D.Ill. 1992). Because the language contained in Section 553(b) is ambiguous, a review of the history of Section 553 assists in determining the purpose and proper application of the improvement in position test.

Setoff is common in commercial transactions. The right of setoff in bankruptcy was initially recognized in the Act of 1800. 4 COLLIER ON BANKRUPTCY ¶ 553.01 at 553–3 (15th ed. 1992) (citations omitted). To the extent that a creditor's right to setoff is protected following the filing of a bankruptcy petition, the creditor will receive a greater share of the debtor's assets than other unsecured creditors.[1] Each of the bankruptcy acts which preceded the 1978 Bankruptcy Code continued to recognize the right of setoff. Under the predecessors to Section 553 a creditor had few restrictions on its right to exercise setoff. 1 ROBERT E. GINSBERG & ROBERT D. MARTIN, BANKRUPTCY: TEXT, STATUTES AND RULES, ¶ 553.02 at 553–10 (3rd ed. 1992).[2] It was generally thought that the protection given to setoff, following the filing of a bankruptcy petition, was too broad under the predecessors to Section 553. *Id.*

The restrictions on setoff were increased under the Bankruptcy Act of 1978. The 1978 Act prohibits a creditor from exercising setoff after the purchase of a claim within 90 days of the filing of a bankruptcy petition, regardless of whether the creditor had knowledge of the debtor's insolvency. 11 U.S.C. Section 553(a)(2). The 1978 Act also prohibits a creditor from creating a claim against the debtor for the purpose of setoff within the 90 days preceding the bankruptcy. 11 U.S.C. Section 553(a)(3). Finally, the 1978 Act adds the improvement in position test to limit the exercise of setoff. 11 U.S.C. Section 553(b).

---

1. The following example illustrates the decided advantage a creditor with the right of setoff has over other unsecured creditors:

   [S]uppose [a] bank is owed $50,000.00 on an unsecured loan made to borrower who maintains a checking account with bank. Borrower defaults on the loan, and the bank sets off borrowers's account, which contains $50,-000.00, in compliance with the state created right of setoff. The borrower files bankruptcy the next day. If the setoff is avoided in bankruptcy, the bank will be required to pay $50,000.00 to the estate and will have a $50,-000.00 unsecured claim. Very little of this claim will be paid if the borrower's bankruptcy is typical. The bank is thus a big loser.

   The bank is a big winner, however, if the setoff is unaffected by bankruptcy. In this event, the bank will keep the $50,000.00 in full satisfaction of its claim.
   1 DAVID G. EPSTEIN, STEVE H. NICKLES, & JAMES J. WHITE, BANKRUPTCY § 6–38, at 655 (1992).

2. Under the previous setoff provision, the right to setoff was limited to allowable claims and claims that were not purchased or transferred to the creditor after the filing of the petition or within four months before such filing, with a view to setoff and without knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy. Bankruptcy Act § 68(b)(2), 11 U.S.C. 108(b)(2) (1970).

■ The restrictions placed on setoff by Section 553 are in many respects similar to the restrictions found in the preference sec tion of the Bankruptcy Code, Section 547. 1 ROBERT E. GINSBERG, ROBERT D. MARTIN, BANKRUPTCY: TEXT, STATUTES AND RULES, ¶ 553.02 at 553–10 (3d ed. 1992). Sections 553 and 547 operate in a similar manner, and were enacted for the same purposes. Section 547 generally gives the trustee the authority to avoid pre-petition transfers on antecedent debts in the 90 days preceding the filing of a bankruptcy petition. 11 U.S.C. Section 547. Section 547(c)(5) protects individual creditors holding "floating liens" over a debtor's inventory and receivables by carving out an exception to the trustee's power to avoid preferences under Section 547. It provides that increases in inventory and receivables are not subject to recapture by the trustee if the creditor has not improved its position in the 90 days preceding the filing of a bankruptcy petition.[3] Section 553 is similar to Section 547(c)(5), in that it protects an individual creditor who engaged in setoff [in effect a preferential payment], as long as the creditor has not improved its position by exercising setoff in the 90 days preceding bankruptcy.[4]

■ Congress' intent in enacting Sections 553 and 547 were virtually the same. When enacting Section 547 Congress stated:

The purpose of the preference section is twofold. First, by permitting the trustee to avoid pre-bankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally.

H.R.REP. No. 95–595, 95th Cong.2d Sess. at 177–78. Congress was concerned with the same issues when it enacted Section 553:

The concern of Congress in enacting the improvement in position test was that creditors, primarily banks, that had mutual accounts with the debtor would foresee the approach of bankruptcy and scramble to secure a better position for themselves by decreasing the "insufficiency," to the detriment of the other creditors. Such a circumstance would not be improbable if banks were allowed to take advantage of any improvement in their position in the ninety days before bankruptcy.

*Lee v. Schweiker*, 739 F.2d 870, 877 (3d Cir.1984) (citations omitted). Through Sections 547 and 553, Congress wanted to discourage creditors from taking hasty action to improve their position when a debtor experienced financial difficulty. In an effort to both protect an individual creditor's right to setoff and discourage creditors from racing to improve their position with respect to other creditors, Congress placed

---

**3.** Section 547(c)(5) provides as follows:

(c) The trustee may not avoid under this section a transfer—

(5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of—

(A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the peti-

tion; or (ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; or

(B) the date on which new value was first given under the security agreement creating such security interest.

**4.** Although the exercise of setoff may satisfy all of the requirements of Section 547, the setoff cannot be avoided as a preference if it falls within the protection of Section 553. The validity or avoidability of a setoff is determined exclusively by Section 553 and is immune from all of the trustee's other avoiding powers, including Section 547. 11 U.S.C. § 547.

the same restrictions on the exercise of pre-petition and post-petition setoff. H.R.REP. No. 95–595, 95th Cong.2d Sess. at 186. Although most of the language in the legislative history of Section 553 discusses setoff when the creditor is a bank, it is clear that Congress also intended Section 553 to apply to non-bank creditors. *Id.* at 184.

Congress contemplated facts similar to those contained in the present case when it limited the exercise of the right of setoff with the improvement in position test. Congress expressly provided that under the improvement in position test "derived from the preference section, any increase in the three months before bankruptcy in the amount of the debt owing by the creditor to the debtor would not be permitted to be offset." H.R.REP. No. 95–595, 95th Cong.2d Sess. 185, 1978 U.S.Cong. & Ad. News at 6145.

Magic (the creditor) has increased the debt it owes Lawndale (the debtor) within the 90 days preceding the filing of the bankruptcy petition. By doing so Magic converted it unsecured debt to secured debt and improved its position.

█ The ambiguous language of Section 553(b) has generated surprisingly little discussion. However, the commentators have favored Lawndale's position. 1 ROBERT E. GINSBERG & ROBERT E. MARTIN, BANKRUPTCY: TEXT, STATUTES AND RULES, Section 8.06[e] at 8–92 (3d ed. 1992). Ginsberg compares the improvement in position test found in Section 547(c)(5) to the improvement in position test of Section 553(b):

The *setoff* improvement-in-position test is similar to the *preference* improvement-in-position test with respect to security interests in inventory or receivables, but differs in many significant ways. For example, the first point for measurement is not necessarily 90 days before the petition even if the right of setoff existed at that time. Instead, it is the date of the first insufficiency in that right. If the right of setoff is first created during the 90–day period, the result under Section 553(b) will depend on who owed a debt to whom first. If the debtor owed

the creditor first, then there was an insufficiency from the time the debt to the creditor was created, and the creation of the right [of setoff] is an improvement in position fully recoverable by the trustee if setoff occurs before the petition.

1 ROBERT E. GINSBERG & ROBERT E. MARTIN, BANKRUPTCY: TEXT, STATUTES AND RULES, Section 8.06[e] at 8–92 (3d ed. 1992). Ginsberg recognizes that, when a creditor engages in activity which first creates the right to setoff within the 90–days preceding bankruptcy, the amount setoff is subject to the improvement in position test. *Id.* at 8–90.

Only a few cases have applied Section 553(b) to similar facts. *See e.g. Hankerson v. U.S. Dept. of Educ.*, 133 B.R. 711 (Bankr.E.D.Pa.1991); *In re Schmidt*, 26 B.R. 89 (Bankr.D.Minn.1982); *In re Keystone Foods*, 145 B.R. 502, 507 (Bankr. W.D.Pa.1992) Each of the cases applied Section 553(b) in the manner suggested by Lawndale, and held that an insufficiency can first arise before debts and credits are running in both directions. *Hankerson*, 133 B.R. at 717; *Keystone*, 145 B.R. at 507; *Schmidt*, 26 B.R. at 92. *Schmidt* provides:

The language of this subsection is complex, but it results in a mathematical formula for determining the "improvement in position" test. The effect of this subsection is to allow the Trustee to recover setoffs which advance the position of one creditor at the expense of all other creditors during the 90 day period before bankruptcy. It works hand in hand with the philosophy of Section 547.... On the ninetieth day, the Debtor owed the Defendant $99,211.13. The Defendant did not owe the Debtor any amount on a mutual debt. The insufficiency arose on the ninetieth day in the total amount due, $99,211.13 ...

*Schmidt*, 26 B.R. at 92. None of the cases discuss why they applied the improvement in position test in the manner which they did. It appears, however, that the courts have applied the improvement in position test in a manner consistent with Congressional intent.

Magic has cited no authority in support of its position that mutual debts must exist

before the first insufficiency can be determined. Magic has only cited authority for the proposition that the mutuality requirement of Section 553 must be strictly construed. *In re Lakeside Community Hospital, Inc.,* 139 B.R. 886, 889 (Bankr. N.D.Ill.1992). Such cases generally construe the mutuality requirement strictly when the issue is whether the debts are claimed and owed by the parties in the same capacity. *See e.g. In re Davidovich,* 901 F.2d 1533 (10th Cir.1990); *L.P. Maun, M.D., Ltd. v. Salyapongse,* 105 B.R. 464 (Bankr.S.D.Ill.1989). For example, a creditor may not set off against its debt to a debtor in its capacity as an individual, a claim it has against the debtor in its capacity as trustee.

▮ If this Court adopted Magic's requirement that the mutual debts must both arise before the first insufficiency can be determined, it would lead to a result which is inconsistent with the remainder of Section 553. A look at a hypothetical suggested by Lawndale in its post-trial brief illustrates why Lawndale's approach is sensible and leads to a consistent application of Section 553:

> Assume that on the ninetieth day before bankruptcy, a debtor owed a creditor $500,000.00 which was unsecured, and the creditor owed the debtor nothing. If Magic's reading of Section 553(b) is adopted, the creditor could accept $500,000.00 worth of goods from the debtor the day before bankruptcy, effect a setoff, and be unaffected entirely by the improvement in position test. Yet when the facts are changed and Magic's approach is again applied, a markedly different result arises. If instead on the ninetieth day preceding the bankruptcy the creditor owed the debtor $1.00, the trustee could recover $499,999.00 of the transfer to the creditor.

This anomalous result is not consistent with the remainder of Section 553. When a subsection of a bankruptcy statute is interpreted, it should be read in a manner consistent with the remainder of the statute. *See Ron Pair Enterprises,* 489 U.S. 235, 242, n. 5, 109 S.Ct. 1026, 1031, n. 5, 103

L.Ed.2d 290 (1988). The court must construe a statute or enactment as a whole in order to ascertain the meaning of a particular word or phrase. *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *In re Helm,* 48 B.R. 227 (Bankr.W.D.Ky.1985). When the exceptions to setoff [contained in Section 553] are viewed as a whole, it is clear Congress intended to prevent creditors from manipulating their claims so as to acquire setoff rights that improve their position with respect to other creditors. Brett Ludwig, Comment, *In re De Laurentiis Entertainment Group: Sacrificing Confirmed Chapter 11 Plans to Delinquently Asserted Setoff Rights,* 77 Minn.L.Rev. 871, 891 (1993). It would frustrate the overall scheme and intent of Section 553 to place the additional restriction suggested by Magic on the Trustee's ability to avoid Magic's improvement in position.

There are numerous sections of the Bankruptcy Code, including Sections 547 and 553, through which Congress has undone and unspun individual creditor's transactions in the interest of the debtor and the creditors as a whole. When Congress enacted Section 553 it intended to strike a fair balance between protecting a creditor's state law right to setoff and deterring creditors from exercising the right of setoff which could hasten a debtor's descent into bankruptcy. To adopt Magic's position would substantially frustrate the purpose of Section 553(b).

For the reasons stated herein, Lawndale Steel Co. is entitled to judgment in the amount of $11,225.31.

Plaintiff has also requested an award of pre-judgment interest. The Supreme Court has held that complete compensation includes an award for pre-judgment interest. *See West Virginia v. United States,* 479 U.S. 305, 306, 107 S.Ct. 702, 704, 93 L.Ed.2d 639 (1987) (contractual debt); *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655–56, 103 S.Ct. 2058, 2062–63, 76 L.Ed.2d 211 (1983) (damages for infringement of patent). Pre-judgment interest is awarded to compensate the wronged party from the time of its loss. *In re Mills,* 111 B.R. 186,

208 (Bankr.N.D.Ind.1988). Generally, interest should be awarded from the time a demand was made for the return of the property, or absent demand, from the date the adversary was filed. *Id.; Foreman Industries, Inc. v. Broadway Sand & Gravel,* 59 B.R. 145, 156 (Bankr.S.D.Ohio 1986).

Pre-judgment interest is not addressed by any federal statute, *Mills,* 111 B.R. at 208, and has generally been left to the Court's discretion. *Id.* at 209. Federal courts in non-bankruptcy cases have held that absent a showing that the equities in a case demand otherwise, the rate for post-judgment interest under 28 U.S.C. Section 1961 is also appropriate for pre-judgment interest. *Id.* Therefore, the Court holds that interest on Plaintiff's claim shall be granted as of February 21, 1992, the date Plaintiff filed its adversary complaint, in accordance with the rate and method of calculation provided in 28 U.S.C. Section 1961.

Counsel for Plaintiff is directed to draft a judgment order and to submit same on notice to defense counsel. This matter is set for further status and submission of the draft order at 10:00 A.M., August 2, 1993.